889 F.Supp. 362 (1995)
NATIONAL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,
v.
HOENE SPRINGS IMPROVEMENT ASSOCIATION, et al., Defendants/Third Party Plaintiffs,
v.
The DANIEL AND HENRY COMPANY, Third Party Defendant.
No. 91-2467C(6).
United States District Court, E.D. Missouri, Eastern Division.
June 7, 1995.
*363 Alan E. Popkin, Charles E. Polk, Jr., Husch and Eppenberger, St. Louis, MO, for Nat. Fire and Marine Ins. Co.
John G. Doyen, Anthony M. Pugliese, Brinker and Doyen, St. Louis, MO, for Donald Capestro.
John H. Marshall, Burns and Marshall, St. Louis, MO, for Hoene Springs Improvement Ass'n, Russ Hoefgen, Keith Hatfield, Harry B. Hoene.
Sanford Goffstein, Michael S. Weinberg, Goffstein and Kraus, St. Louis, MO, for Daniel and Henry Co.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the merits of plaintiff National Fire and Marine Insurance Company's (National Fire) claims after a one day non-jury trial. This is a declaratory judgment action filed by National Fire to determine the rights and obligations under an excess/surplus insurance policy issued to the defendant Hoene Springs Improvement Association (Association) for injuries allegedly sustained by Martin Heinz while participating in the Association's annual turkey shoot. Heinz and his wife filed in Missouri state court a two-count petition for damages against defendants Russ Hoefgen, Joseph Donald Capestro, Jr.,[1] Keith Hatfield, Harry B. Hoene[2] and the Association alleging *364 that Heinz was shot as a result of defendants' negligence.
National Fire denied coverage based on a special events endorsement which excluded coverage for "bodily injury arising out of injury or death of any person while practicing for or participating in any contest or event" and that defendant Hatfield was not a named insured under the policy. In addition to the declaration that coverage does not exist under the policy, National Fire seeks a declaration that it is not obligated to provide a defense for defendants in the Heinz state action.
Defendants/third-party plaintiffs filed a third-party complaint against The Daniel and Henry Company (Daniel and Henry) contending that if the Court enters a declaratory judgment finding no coverage by National Fire for the Turkey Shoot incident, third-party defendant Daniel and Henry is liable to third-party plaintiffs for its negligence in failing to procure liability coverage for the Turkey Shoot.
The Court having considered the pleadings, the testimony and the documents in evidence, and being fully advised in the premises, makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

FINDINGS OF FACT
1. Plaintiff National Fire and Marine Insurance Company (National Fire) is a corporation engaged in the business of issuing excess/surplus insurance, such insurance provides coverage for risks not usually insured by standard insurance companies. National Fire relies on general agents to market its insurance policies. Gateway Underwriters Agency served as its agent in issuing excess/surplus insurance in this matter by reviewing policies to determine the acceptability of the policies.
2. Defendant Hoene Springs Improvement Association (Association) is an association of homeowners located in Jefferson County, Missouri.
3. Defendant Russ Hoefgen (Hoefgen), an officer of the Association, served as the treasurer at the time of occurrence.
4. National Fire dismissed without prejudice its claim against defendant Joseph Donald Capestro, Jr. (Capestro), the shooter in the contest, on January 31, 1994.
5. Defendant Keith Hatfield (Hatfield), an agent of the Association, was neither an officer nor director of the Association at the time of the shooting.
6. Defendant Harry B. Hoene (Hoene), a trustee, is a named insured on the policy.
7. Third-party defendant The Daniel and Henry Company (Daniel and Henry) is an insurance brokerage company.
8. An employee of Daniel and Henry contacted Gateway Underwriters in 1986 inquiring into whether National Fire would issue a commercial general liability policy for the Association and named insureds. Gateway Underwriters issued a policy through National Fire who sent the policy to Daniel and Henry.
9. The Association retained Daniel and Henry to procure a policy of liability insurance with National Fire with the first policy 3LP 11 14 39 being issued to the Association for the period of October 22, 1986 to October 22, 1987 with the calculated premium of $1,600.00. Included in the calculated premium was a $500.00 special premium charge for coverage of the spectators attending the three special events. Policy 3GL 90315 listed as special events on the liability schedule page the Turkey Shoot, Halloween Party and Easter Egg Hunt. The Special Events and Assault and Battery Endorsements were not listed as endorsements attached to the policy. In a letter dated November 11, 1986, William Cremins, Daniel and Henry's chief executive officer, billed the Association for the annual premium in the amount of $1,680.00.
10. Leslie Baller, a vice president of underwriting for National Fire, testified that the underwriting department failed to request the addition of any endorsements to the policy at issue due to an oversight by that department. Baller further stated that National Fire never includes coverage for special events without a participant exclusion. *365 Gateway Underwriters drafted the policy failing to include their assault and battery (form number M 3750) and the special events (form number 3787) endorsements excluding participants from coverage.
11. In October of 1987, Daniel and Henry requested National Fire to renew policy 3GL 90315 issued to the Association. Based on increased coverage provided by changes in National Fire's general policy terms, Gateway Underwriters quoted the renewal premium at an increased amount of $1,975.00 for the policy providing coverage from October 22, 1987 to October 22, 1988. Included in the policy as a premise and operation risk were the Turkey Shoot, the Halloween Party and the Easter Egg Hunt with a special premium charge of $600.00 for coverage of the special events without any participant exclusion endorsement attached. The Commercial General Liability Schedule of the policy listed as special events the Turkey Shoot, the Halloween Party and the Easter Egg Hunt and further notation on the schedule indicated that only the events scheduled are covered. The policy listed the Association on the declaration page and Rosemary Hoene, James Hoene and Shelley Hoene in endorsement CG 20 24 11 85 as the named insureds. At the time of renewal, the policy did not include the special events or the assault and battery endorsements.
12. In a letter dated November 3, 1987, Cremins noted to the Association that only the events scheduled, such as the Turkey Shoot, Halloween Party and the Easter Egg Hunt, are covered by the policy. He also enclosed the billing for the annual premium in the amount of $2,123.75. This amount included the premium for the policy as well as his commission.
13. At trial, Paula Lee, an insurance underwriter for Gateway Underwriters on the Association account, testified that in reviewing policy 3GL 90315, Leslie Baller, a vice president in National Fire's underwriting department, noticed discrepancies in the policy such as a failure to include two endorsements. Underwriters review the policy to determine whether an endorsement should be included in the policy and, during such reviews, underwriters frequently determine that endorsements not included should be included. Baller testified that in such a case, an insured can accept or reject the addition of the endorsement but if the insured rejects the addition of the endorsement, National Fire cancels the policy and returns the premium. The company's policies required the inclusion of a Special Events Endorsement whenever special events were covered and an Assault and Battery Endorsement whenever alcohol was served. Lee testified that because she was unaware of the sale of liquor at the Turkey Shoot, she did not include an assault and battery endorsement. Baller further testified that National Fire did not exercise its right to cancel the Association's policy inasmuch as National Fire acted on the Association's apparent consent to adding the endorsements to the policy by its lack of objection to such addition.
14. On October 22, 1987, National Fire renewed the insurance policy identifying various premise and operation risks such as the October Turkey Shoot. Baller testified that after reviewing the policy, the underwriters noticed a discrepancy with the policy due to the missing endorsements on November 6, 1987.
15. On November 9, 1987, National Fire requested Gateway Underwriters to add the Assault and Battery endorsement to policy 3GL 90315 and thereafter requested the Special Events endorsement be added to the policy as well. In a letter dated December 21, 1987, National Fire cited the serving of alcohol and the size of the crowd at the Turkey Shoot as the basis for requiring the inclusion of both endorsements and directed Gateway Underwriters to add the endorsements excluding all participants from coverage but not spectators.
16. On December 28, 1987, Gateway Underwriters, in response to National Fire's request, added the Special Events and the Assault and Battery endorsements to policy 3GL 90315 and dated as of October 22, 1987, the renewal date of the policy without discussing the addition of the endorsements with either the Association or Daniel and Henry. National Fire seeks to enforce the applicability of the endorsements retroactively and deny coverage on that basis.
*366 17. The Special Events endorsement, form number M-3787, provides in relevant part as follows:
This insurance does not apply to Bodily Injury or Property Damage arising out of
1. Injury or death of any person while participating for or participating in any contest or event ... of any nature....
All other terms, conditions and agreements of the policy shall remain unchanged.
Although the policy provided coverage for individuals attending or observing the Turkey Shoot, actual participants were explicitly excluded.
18. Gateway Underwriters sent Daniel and Henry an original and one copy of the Special Events and the Assault and Battery endorsements. Gateway Underwriters also sent a copy of the endorsements to National Fire. Even though none of the special events would be covered after the addition of the endorsements to the policy, National Fire never issued a new declaration page to the policy. Neither Daniel and Henry nor the Association ever objected to the addition of the endorsements.
19. Leslie Baller, a vice president of underwriting, testified that National Fire would have cancelled the policy if the insureds would not have consented to the addition of the endorsements to the policy. Neither Gateway Underwriters nor National Fire refunded any part of the premium to the Association after the addition of the endorsements even though the calculated premium paid by the Association included coverage for the special events in the policy as issued. Baller explained that there is not always a refund of part of the premium in the event an endorsement is added to a policy and the policy does not require a refund in such an event. Baller further explained in his testimony that no refund of any portion of the premium was due inasmuch as National Fire calculated and priced the policy based on the inclusion of such endorsements.
20. Michael Cremins in his testimony admitted that Daniel and Henry had copies of both of the endorsements in the office files, but he could not recall if he sent copies of the special events endorsement to the Association. As a matter of practice, Cremins admitted that upon receipt of an endorsement he would either send out a copy to the insured or place a copy in the file depending upon the importance of the endorsement. Daniel and Henry forwarded copies of the endorsements to the Association after National Fire declined coverage. Cremins further testified that he never spoke to anyone from the Association concerning the special events or the assault and battery endorsements.
21. National Fire's Common Policy Conditions in sections A and B provide for the right to cancel if the terms are unacceptable or to change terms of the policy as follows:
[National Fire] may cancel this policy by mailing or delivering to the first Named Insured notice of cancellation at least 10 days before the effective date of cancellation.
This policy contains all the agreements between you and [National Fire] concerning the insurance afforded. The first Named Insured in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by [National Fire] and made part of this policy.
22. At trial, Leslie Baller testified that National Fire would not have issued the policy to the Association without including the Special Events and Assault and Battery endorsements.
23. In January of 1988, a representative from Daniel and Henry contacted Gateway Underwriters requesting that policy 3GL 90315 be endorsed to include the participants of the Easter Egg Hunt without an additional premium charge. On February 1, 1988, after National Fire approved the rider by telex, Gateway Underwriters issued a general change endorsement thereby providing coverage for the participants of the Easter Egg Hunt in consideration of the premium charged. The general change endorsement specifically provided that item 1 of endorsement M 3787 does not apply to the Easter Egg Hunt so that the participants in the event will be covered. Gateway Underwriters *367 sent copies of the general change endorsement to Daniel and Henry and National Fire. Baller testified that he had no first hand knowledge of anyone contacting National Fire and requesting coverage of the participants in the Association's Easter Egg Hunt. The Court concludes from the evidence presented at trial the identity of the person who initiated coverage for the participants of the Easter Egg Hunt is not known.
24. Cremins admitted that the files of Daniel and Henry contain a copy of the general change endorsement directed to the Easter Egg Hunt participants but he testified he did not contact the Association, nor did the Association contact him, concerning participant coverage for the Easter Egg Hunt.
25. Neither National Fire nor Gateway Underwriters issued a refund of part of the premium to the Association after the addition of the special event endorsements. Baller testified that the policy had no provision for refund of premium and that sometimes National Fire issues a premium refund in the event of change of coverage but sometimes no refund is issued.
26. On October 2, 1988, the Association held the annual Turkey Shoot at which time Capestro accidentally shot Heinz.
27. On October 6, 1988, the Association notified Daniel and Henry of the accident at the Turkey Shoot by completing a general liability loss notice and thereafter Daniel and Henry notified Gateway Underwriters of the accident.
28. On May 11, 1990, National Fire sent a written declination of coverage based on the Special Events endorsement and some of the parties involved were not insureds under the policy. The Association received for the first time a copy of the endorsements after receiving National Fire's declination letter.

CONCLUSIONS OF LAW
1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. In accordance with 28 U.S.C. §§ 2201 and 2202, National Fire seeks a declaratory judgment of the rights, liabilities and obligations of the parties regarding the policy of insurance at issue and the putative rights and obligations arising thereunder. In this diversity suit for declaratory judgment, the rights of the parties are governed by Missouri state law. American Motorists Ins. Co. v. Samson, 596 F.2d 804, 807 (8th Cir.1979). Insurance policies are contracts to which the rules of contract construction apply under Missouri law. Peters v. Employers' Mut. Casualty Co., 853 S.W.2d 300, 301-02 (Mo.1993).
2. At the outset the Court finds that defendant Hatfield is not an insured under National Fire's policy inasmuch as he is not a named insured nor does he fall within the class of insureds such as an officer, director or employee of the Association as defined in the policy. Spychalski v. MFA Life Ins. Co., 620 S.W.2d 388, 395 (Mo. Ct.App.1981). Accordingly, National Fire has no duty to defend Hatfield in the underlying state case.
3. Although an insured has the burden to prove coverage under a policy, the burden rests on the insurer to disprove coverage under a policy. Estrin Constr. Co. v. Aetna Casualty & Sur. Co., 612 S.W.2d 413, 419 (Mo. Ct.App.1981). An ambiguity in an insurance policy is resolved in favor of the insured where a reasonable person in the position of the insured would have expected coverage. Id. at 420.
4. Although the policy is unambiguous as written, the Court concludes that National Fire's retroactive issuance of the two endorsements without consulting with the insureds or giving notice to the insureds or refunding any of the premium paid created an ambiguity in the policy. Missouri law allows for provisions in a policy to be construed against the insurer where the provisions are ambiguous. Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc); Sargent Constr. Co. v. State Auto Ins. Co., 23 F.3d 1324, 1326 (8th Cir. 1994). The Missouri Supreme Court specifically held that "[a]mbiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer." Id. at 210-11. Two months after renewing the policy including coverage for the Turkey *368 Shoot, National Fire added the two endorsements thereby excluding injury arising out the special events specifically listed on the policy. This unilateral restriction of coverage without consent of the insured or apprising the insured of cancellation unless such endorsements were attached to the policy must be strictly construed against National Fire as the insurer.
5. National Fire could not unilaterally modify the policy without providing the insured, the Association, with notice of the modification. Hester v. American Family Mut. Ins. Co., 733 S.W.2d 1, 2 (Mo. Ct. App.1987) (a change in coverage, especially where policy itself provided change in terms and conditions of policy, required agreement of parties inasmuch as change in coverage could not be found absent notice to insured). In the Hester case, the insurer attempted to reduce its insured's coverage from $15,000.00 to $1,000.00 after renewal. As in this case, there was no evidence showing the insured actually received notice of the modification prior to the loss. The Court concludes that there is no evidence to support a finding that the Association accepted the policy after receiving notice of the addition of the endorsements or for that matter had any knowledge of the special events endorsement being added to the policy. Consequently, the Association never accepted or agreed to the addition of the endorsements to the policy. The only evidence presented at trial addressed the issuance of the special events and the assault and battery endorsements by National Fire and Gateway Underwriters without notice being given to Daniel and Henry or the Association prior to such issuance.
6. With respect to National Fire's obligation to provide a defense for defendants in the Heinz state court action before the Circuit Court of Jefferson County, the Court concludes that National Fire has a duty to defend inasmuch as Missouri law provides that an insurance company has a duty to defend if the claim falls within the policy. Estrin Constr. Co. v. Aetna Casualty & Sur. Co., 612 S.W.2d at 416.
7. Inasmuch as the Court finds National Fire shall provide coverage under its policy, there is no need to address defendants/third party plaintiffs' third-party complaint against Daniel and Henry wherein third-party plaintiffs contend that if the Court enters a declaratory judgment finding no coverage by National Fire for the Turkey Shoot incident, third-party defendant Daniel and Henry is liable to third-party plaintiffs for its negligence in failing to procure liability coverage for the Turkey Shoot.
8. Citing § 527.100, Mo.Rev.Stat., defendants the Association, Hoefgen and Hatfield request that the Court award attorneys' fees. Whether to award attorneys' fees to a prevailing party under § 527.100 is a matter within the Court's discretion. The Court concludes an award of attorneys' fees is not appropriate in this case.

JUDGMENT
Findings of fact and conclusions of law dated this day are hereby incorporated into and made part of this judgment.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff National Fire and Marine Insurance Company shall provide coverage under the policy for the damage claims arising from the Turkey Shoot and therefore has a duty to defend defendants in the Heinz Suit as directed in the memorandum.
IT IS FURTHER ORDERED that the cause of action shall be and it is dismissed as to defendant Harry B. Hoene inasmuch as plaintiff failed to file a motion for substitution within the strictures of Rule 25 of the Federal Rules of Civil Procedure as directed by the Court in the Order dated December 23, 1993.
IT IS FURTHER ORDERED that defendants/third-party plaintiffs shall recover nothing from third-party defendant Daniel and Henry Company under their third-party complaint.
IT IS FURTHER ORDERED that defendants Hoene Springs Improvement Association, Russ Hoefgen and Keith Hatfield's request for attorney's fees shall be and it is denied.
NOTES
[1] On January 31, 1994, plaintiff dismissed without prejudice its claim against Capestro.
[2] The Court dismissed plaintiff's cause of action against defendant Hoene earlier in this Order.