Maraea Michie **WEINBERG** and Transamerica Insurance Company, Plaintiffs/Respondents,

v.

**SAFECO INSURANCE COMPANY OF ILLINOIS, Defendant/Appellant.**

No. 67379.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1996.

David M. Duree, James A. Bingley, Reinert & Duree, P.C., St. Louis, for appellant.

Russell F. Watters, Steven H. Schwartz, Brown & James, P.C., St. Louis, for respondents.

SMITH, Presiding Judge.

Defendant, Safeco Insurance Company, appeals from a declaratory judgment finding that its policy of automobile insurance issued to Debbie Plog covered a one car automobile accident while the vehicle was being driven by plaintiff, Maraea Weinberg. We affirm.

In 1991, a group of students from Washington University took a trip to Florida during spring break. The trip was organized by Tom Plog, a campus minister at Washington University, who was employed by the Christian Student Fellowship (CSF). Tom Plog and his wife, Debbie, accompanied the students as volunteer chaperons. Two minivans were rented from Don Darr Ford, Inc. for transportation. Tom Plog and one student went to Darr to rent the vehicles and Tom Plog was listed as the "customer". He signed the agreement and listed his employer as CSF. Attached to the rental agreement was a list of persons over 21 going on the trip who had valid driver's licenses and had volunteered to drive the vans. Weinberg was on the list.

Each student on the trip contributed $200, which was used to pay the trip expenses, including the van rental. The president of CFS gave Tom Plog his American Express credit card for use in renting the vans, apparently as security. He did so because he believed, mistakenly, that American Express would waive the $500 deductible in the event of an accident. After the accident the president paid the deductible from his personal funds and took it as a charitable deduction on his tax return.

Prior the trip, Tom Plog had a meeting with the students to establish the ground rules. Students were limited to a maximum of three hours per driving shift and someone was always to ride in the front passenger seat to help keep the driver awake. The vans traveled "caravan style" with one in front of the other with a passenger car of one of the students between them. The vans were equipped with "walkie-talkies" to keep

in contact, determine rest stops, give directions, etc. Tom Plog always rode in one of the vans, and had access to the "walkie-talkie". He planned the route to Florida, and kept the keys to the vans when not in use. Students volunteering to drive had to obtain the keys from Tom Plog.

Weinberg volunteered to drive during the return trip. Near Valdosta, Georgia, the van she was driving overturned in a one car accident, resulting in the death of one passenger and injuries to several others. Neither of the Plogs was in that vehicle at the time of the accident.

Lawsuits were instituted by the parents of the deceased student and by three injured students. After one case was disposed of and while three were pending, Weinberg and Transamerica Insurance Company filed this declaratory judgment action to have determined insurance coverage for the accident. The defendants were Liberty Mutual Insurance Company, insurer for Don Darr Ford, Brotherhood Mutual Insurance Company, insurer for CFS, Mid–Century Insurance Company, insurer for Tom Plog, and Safeco, insurer for Debbie Plog. Prior to trial, all suits were settled. Liberty, as primary insurer, had already paid its limits and was dismissed out prior to trial. The court granted summary judgment against Mid–Century ordering it to pay its proportional share of the liability. After trial the court found against Brotherhood and Safeco, ordering each to pay its proportional share of the liability. Safeco was further ordered to pay prejudgment interest to Transamerica on two of the underlying claims. Only Safeco has appealed.

Safeco's policy was in effect at the time of the accident and covered Debbie Plog, and specifically a 1990 Toyota Corolla owned by her but not used on the Florida trip. The policy defines "persons insured" with respect to non-owned vehicles as:

> Persons insured: The following are insureds under the Liability Section:
>
> \*     \*     \*     \*     \*     \*
>
> (b) With respect to a non-owned automobile.
> (1) the named insured.

(2) any relative, but only with respect to a private passenger or utility automobile or trailer.

provided, under (b)(1) or (2) above, his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) **any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above.** (Emphasis supplied)

The "named insured" of the policy is the person named in the declarations (Debbie Plog) and her spouse (Tom Plog). The trial court found that the non-owned automobile provisions of the policy provided coverage to Weinberg during the operation of the van on the Florida trip. Safeco contends that it does not for two reasons. First, Weinberg through her contribution to the pool of money for the trip "hired" the van and second, that her liability did not arise "because of acts or omissions of an insured".

The trial court made a factual determination that Weinberg did not "hire" the van as that term is used in the policy. Review of that factual determination is that mandated by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The person who leased the vehicle was Tom Plog and he was the customer of the lessor. The trip to Florida was not a joint venture because a joint venture requires that all members have "an equal right to a voice in the direction of the enterprise, which gives an equal right of control". *McSorley v. Hauck*, 883 S.W.2d 562 (Mo.App.1994) [2, 3]. The evidence here is clearly sufficient to establish that the control of the trip was vested solely in Tom Plog. Nor does the language of the policy make clear that arrangements such as that involved here are contemplated or covered by the phrase "person ... hiring the automobile". The policy is at best ambiguous as to whether it excludes liability coverage for any person who has contributed money for the

purpose of leasing or hiring an automobile or whether it is limited to the individual actually entering into the lease. The ambiguity is interpreted so as to afford coverage. *See Noll v. Shelter Insurance Companies*, 731 S.W.2d 393 (Mo.App.1987). The trial court did not err in finding that Weinberg did not "hire" the van within the meaning of the policy.

In *Noll v. Shelter Insurance Co.*, *supra*, we dealt with language very nearly identical with the "acts or omissions of an insured" language now before us. We held the language there to be ambiguous and determined it did not preclude coverage.[1] Safeco attempts to distinguish *Noll*. It didn't and we can't. The court did not err in finding coverage was afforded to Weinberg.

Safeco also premises error on the trial court award of pre-judgment interest on two of the claims which were disposed of and in which Safeco did not participate. Both were disposed of prior to the commencement of the declaratory judgment trial. Specific written demand is not required to obtain prejudgment interest on a written insurance policy. *Jones v. Ohio Casualty Insurance*, 869 S.W.2d 288 (Mo.App.1994). Safeco participated in two of the cases arising from the accident and was aware of its potential liability in the other two cases.

It is true, as Safeco contends, that the exact amount of its contribution to the amount advanced by Transamerica could not be made until the liability of Brotherhood and Mid–Century was determined. However, exact calculation is not necessary for a claim to be liquidated. In *Nodaway Valley Bank v. Continental Casualty Co.*, 916 F.2d 1362 (8th Cir.1990) [3] the court stated: "Missouri cases support an allowance for pre-judgment interest, even though the claim against the insurer for moneys previously advanced could not be specified until an allocation occurred." A court may consider equitable principles of fairness and justice when awarding prejudgment interest. *Catron v. Columbia Mutual Insurance Compa-*

*ny*, 723 S.W.2d 5 (Mo. banc 1987) [2]. Transamerica and Brotherhood have advanced money which Safeco has now been found to be liable for. Transamerica and Brotherhood have lost the use of that money during the period of litigation, and Safeco has had the benefit of that money during that period. Interest is the means by which the economic society, and the courts, pays for the use of money. For purposes of prejudgment interest the amount was sufficiently liquidated to warrant an award of such interest. Our review is in accord with *Murphy v. Carron*, *supra*, and we find no error under the standards of that case.

Judgment affirmed.

GARY M. GAERTNER and RHODES, JJ., concur.

---

1. It is difficult to understand precisely what the language covers. Safeco suggests that it engrafts the concept of actual negligence by a named insured. It does not so state. If that is the intention, we assume that the provision could so state. As written, the provision is enigmatic, but we must assume it provides coverage of some sort, as we determined in *Noll*.