**HOCKER OIL COMPANY, INC.,**
Respondent–Appellant

v.

**BARKER–PHILLIPS–JACKSON,**
INC., Defendant

and

**Ranger Insurance Company,**
Appellant–Respondent.

Nos. 22552, 22553.

Missouri Court of Appeals,
Southern District,
Division One.

June 23, 1999.

Motion for Rehearing and Transfer to
Supreme Court Denied July 13, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Ronald C. Willenbrock, Julie A. Stoff, Amelung, Wulff & Willenbrock, P.C., St. Louis, for appellant Ranger Ins. Co.

Mark B. Leadlove, Jennifer M. Arthur, Bryan Cave, LLP, St. Louis, for respondent Hocker Oil Co.

JOHN E. PARRISH, Judge.

Ranger Insurance Co. (Ranger) appeals the judgment entered with respect to Count I of a five-count action brought by Hocker Oil Company, Inc., (Hocker). Hocker cross-appeals with respect to Count II of the judgment. Counts III, IV and V were directed to Barker–Phillips–Jackson, Inc. (Barker–Phillips). There was no disposition of any claim against Barker–Phillips. Judgment was entered on Counts I and II as permitted by Rule 74.01(b), the trial court finding no just reason for delay. Ranger's appeal is No. 22552. Hocker's appeal is No. 22553.

Pursuant to stipulation, Ranger was designated appellant and Hocker respondent. *See* Rule 84.04(j), Missouri Rules of Court (1998).[1] Count I was a breach of contract

---

1. The appeals and the stipulation as to the designation of parties for purposes of those

action directed to an insurance policy Ranger issued to Hocker. Count II was an action for vexatious refusal to pay claims based on that policy. The trial court entered judgment for Hocker on Count I and judgment for Ranger on Count II. This court affirms in No. 22552 and No. 22553.

## Facts

Hocker operates a number of service stations and related businesses in Missouri. Some premises on which the businesses are located are owned individually by John Hocker and Phyllis Hocker, president and vice-president, respectively, of Hocker. The corporation owns others. The corporation operates all of the businesses.

Ranger issued an insurance policy for the period February 1, 1987, to February 1, 1988, in which Hocker and Gas Plus, Inc., were named insureds. The policy was entitled "Special Multi–Peril Policy." The policy identified premises operated by Hocker at 29 locations as businesses to which insurance coverage was provided. The business premises for which insurance was provided included Hocker's Ironton, Missouri, station.

On January 12, 1988, a drain plug on a gasoline storage tank at the Ironton gasoline station failed. Approximately 2,000 gallons of gasoline were released into the ground. The gasoline migrated onto property owned by Edgar R. Bay and Norma G. Bay adjacent to Hocker's Ironton station. On January 13, 1988, Barker–Phillips, the insurance agent through whom Hocker purchased its insurance policy, notified Ranger of the occurrence. The means of notification was a form entitled "General Liability Loss Notice." It was directed to Ranger and identified the policy to which the loss referred by number and by the insured's name and address.

Ranger replied by letter dated January 21, 1988. Ranger's letter referred to a policy endorsement, GU271. Ranger concluded that by reason of the endorsement "there is no coverage for this loss." Policy endorsement GU271 is part of the policy Ranger issued to Hocker. The endorsement states that the policy's coverage does not apply:

(1) to **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

 (a) at or from premises owned, rented or occupied by the **named insured;**

 (b) at or from any site or location used by or for the **named insured** or others for the handling, storage, disposal, processing or treatment of waste;

 (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **named insured** or any person or organization for whom the **named insured** may be legally responsible; or

 (d) at or from any site or location on which the **named insured** or any contractors or subcontractors working directly or indirectly on behalf of the **named insured** are performing operations:

 (i) if the pollutants are brought on or to the site or location in connection with such operations, or

 (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) to any loss, cost or expense arising out of any governmental direction or request that the **named insured** test for, monitor, clean up, remove, con-

---

tain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Hocker responded that "gasoline is a product, not a pollutant"; that, therefore, the policy covered the loss caused by the gasoline leak. Hocker requested that Ranger provide a copy of any published definition Ranger had of the words "pollutant," "pollution," and "gasoline." Ranger's claim representative, Jack M. Connaughton, responded, "As to a definition of *pollutant,* I can only refer you to the last sentence at the bottom of endorsement GU 271, *Pollution Exclusion."* Mr. Connaughton stated, "As far as pollution and gasoline are concerned, I do not know of a published definition other than in a dictionary." On behalf of Ranger, Mr. Connaughton again denied coverage.

On April 22, 1988, Mr. and Mrs. Bay filed a lawsuit against Hocker seeking damages for personal injuries and property damage caused by the gasoline leak. That action was later settled. Hocker paid Mr. and Mrs. Bay $95,000. In exchange it received title to the property Mr. and Mrs. Bay owned in Ironton that adjoined the premises where the gasoline leak occurred. Hocker notified Ranger that the Bays' action had been settled. Hocker demanded reimbursement for the settlement amount and payment of attorney fees it incurred. Ranger denied coverage. Hocker filed this action.

Ranger moved for summary judgment on Counts I and II. Hocker moved for partial summary judgment on those counts as to the issue of liability. The trial court granted Ranger's motion as to Count II, Hocker's claim for vexatious refusal to pay. It granted Hocker's motion for summary judgment as to liability on Count I.

The trial court entered a "Partial Summary Judgment Order" dated January 13, 1998, that included the acknowledgment and directive:

Inasmuch as counsel for the parties have indicated that they will try to come to an agreement as to the amount of Hocker's damages, further proceedings to prove Hocker's damages may be unnecessary. Accordingly, the parties are instructed to try to reach an agreement as to damages, and in the event they are unable to reach agreement, to request a hearing or other proceeding on damages.

The judgment from which Ranger and Hocker appeal was entered July 14, 1998. It recites:

Hocker and Ranger have now entered into a joint "Stipulation of Fact" concerning damages, which has been filed with this Court. Hocker has also presented the Court with a calculation of prejudgment[2] interest on the stipulated principal amounts from the date they were incurred through June 30, 1998.... Accordingly, this Court enters judgment in favor of plaintiff Hocker Oil Company against defendant Ranger Insurance Company in the amount of $232,057.01. Post-judgment interest shall accrue on that amount commencing July 1, 1998.

### Appellate Review

■ This court's review of a summary judgment is essentially de novo.*Woodfill v. Shelter Mut. Ins. Co.,* 878 S.W.2d 101, 102 (Mo.App.1994). "When reviewing a summary judgment, an appellate court looks ... to all pertinent materials presented to the trial court to determine if there is any material fact issue and that the moving party was entitled to judgment as a matter of law." *Dent Phelps R–III School Dist. v. Hartford Fire Ins. Co.,* 870 S.W.2d 915, 917 (Mo.App.1994). In cases involving construction of insurance policies "[w]here there is no issue over a material fact with

2. Hocker filed a motion for pretrial interest

that the trial court granted June 19, 1998.

respect to interpretation of an insurance policy, but there is a question about the meaning of the language of the policy – whether the language affords coverage for a loss – the matter in dispute is a question of law." *Woodfill, supra,* at 103.

### Ranger's Appeal—No. 22552

Ranger's first point asserts the trial court erred in granting partial summary judgment for Hocker as to Count I because the pollution exclusion in the multi-peril policy was applicable to preclude liability under that policy. Ranger contends the pollution exclusion in that policy is unambiguous; that any damages arising from the release of gasoline from Hocker's storage case were not covered.

■ *Sargent Const. Co v. State Auto. Ins. Co.,* 23 F.3d 1324 (8th Cir.1994), aptly and succinctly states Missouri's law regarding insurance policies found to be ambiguous.

> Missouri law regards insurance policies as contracts to which the rules of contract construction apply. *Peters v. Employers' Mut. Casualty Co.,* 853 S.W.2d 300, 301–03 (Mo. [banc] 1993). When an insurance policy is ambiguous, a court shall construe it using contractual rules of construction. *American Family Mut. Ins. Co. v. Ward,* 789 S.W.2d 791, 795 (Mo. [banc] 1990). Furthermore, if an insurance policy is ambiguous, the policy shall be construed against the insurer. *Robin v. Blue Cross Hosp.. Serv.. Inc.,* 637 S.W.2d 695, 698 (Mo. [banc] 1982).

*Id.* at 1326–27 (footnotes omitted). If a policy is not ambiguous, its express terms will be enforced as written. *Hempen v. State Farm Mut. Automobile Ins. Co.,* 687 S.W.2d 894 (Mo. banc 1985).

■ An ambiguous insurance policy is construed against the insurer because the policy's purpose is to provide protection. *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992). The insurer is the drafter of the policy. "[I]nsurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Gaunt v. John Hancock Mutual Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir.1947).

"An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Krombach,* 827 S.W.2d at 210 (citations omitted).

■ Hocker operates gasoline stations in southern Missouri. The insurance policy Hocker acquired from Ranger covered all of the stations it operates. The policy required Ranger to:

> ... pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> **bodily injury** or
> **property damage**
> to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the **named insured** conducted at or from the **insured premises,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage,** ....

The exclusion provision on which Ranger relies is directed to this coverage. It states the coverage does not apply "to **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." "Waste" is defined as includ-

ing "materials to be recycled, reconditioned or reclaimed." Gasoline is not specified by name as "a pollutant."

Ranger issued insurance to petroleum marketers, propane dealers and other specialized industries for approximately 20 years. Its policies for petroleum marketers were issued through a "Gasoline Operations" or "Gasoline Department."

In finding the exclusion ambiguous and holding that the policy provided coverage for Hocker's loss, the trial court followed an Indiana case, *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind.1996). The case was brought by the Indiana Department of Environmental Management. It sought damages from Mr. and Mrs. Kiger for cleanup costs attributable to gasoline that leaked from an underground storage tank at a gasoline station owned and operated by the Kigers. Mr. and Mrs. Kiger filed a third-party claim against their insurer, American States Insurance Co. The Kigers asserted that American States Insurance Co. was obligated to defend and indemnify them against the claim.

The Kigers' policy included "an explicit 'pollution exclusion' clause." It stated that the policy coverage did not apply to:

"Bodily injury," "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

*Id.* at 948.

"Pollutants" was defined:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.*

In *Kiger*, the Indiana court concluded:

[T]he interpretation offered by American States ... makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas

station's business operations. In addition, the language excludes coverage for damage caused by "alleged discharge[s]" of "pollutants," which could be understood to mean that a mere allegation of pollution discharge could defeat all coverage.

In any event, since the term "pollutant" does not obviously include gasoline and, accordingly, is ambiguous, we once again must construe the language against the insurer who drafted it. Appellant [American States Insurance Co.] claims that in common parlance gasoline is sometimes referred to as a pollutant. That may be correct, but the ambiguity remains. If a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit....

*Id.* at 949.

The trial court's Partial Summary Judgment Order in this case declared that the language in the pollution endorsement of the insurance policy issued to Hocker was ambiguous. The trial court found *Kiger* persuasive. It concluded, "The general and vague language of the 'pollution exclusion' endorsement does not preclude coverage for damage claims against Hocker arising out of the release of gasoline at Hocker's Ironton, Missouri station on January 12, 1988."

Ranger argues the trial court erred in finding that the pollution endorsement was ambiguous. It contends that gasoline is a pollutant as that term is defined in the pollution exclusion; that the definition is not ambiguous. It relies on cases from other jurisdictions and on the affidavit of Steve Hintze who states he is "a Claims Manager of Ranger Insurance Company." Ranger's brief asserts, "According to Steve Hintze, gasoline is clearly a 'pollutant,' within the meaning of the Pollution Exclusion."

Ranger's reliance on a self-serving affidavit given by a claims manger it employs is perplexing. The interpretation of

the meaning of an insurance policy is a question of law. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo. App.1988). Whether the definition of "pollutants" set forth in the policy in question is inclusive of gasoline is to be determined based on the language used in the policy, not by proclamation of a party to the litigation. The declaration of Ranger's employee of the meaning of the words in the policy is, at best, unnecessary. At worst, it suggests Ranger's lack of confidence in its policy language.

■ Rules of construction determine the meaning of a contract's language. "The policy is a contract. Plain and unambiguous language must be given its plain meaning. *The contract should be construed as a whole;* but in so far as open to different constructions, that most favorable to the insured must be adopted." *Central Surety & Ins. Corp. v. New Amsterdam Cas. Co.*, 359 Mo. 430, 222 S.W.2d 76, 78 (banc 1949). "Ambiguity arises in an insurance policy when there is duplicity, indistinctness or uncertainty of meaning." *Walters v. State Farm Mut. Auto. Ins. Co.*, 793 S.W.2d 217, 219 (Mo.App.1990). With respect to exclusion clauses, an insurer claiming applicability of an exception to the general liability clause of a policy has the duty to prove its applicability. *Id.* "Exclusion clauses in insurance policies are strictly construed against the insurer." *Id.*

■ The first issue presented is whether the policy's language is plain and unambiguous. That determination is made in light of the meaning that would ordinarily be understood by the layman who acquired the policy. *Krombach,* 827 S.W.2d at 210; *Robin v. Blue Cross Hosp. Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982); *Stafford v. Travelers Ins. Co.*, 530 S.W.2d 23, 25 (Mo.App.1975); *Adams v. Covenant Sec. Ins. Co.*, 465 S.W.2d 32, 34 (Mo.App.1971). The meanings insurance experts attribute to nontechnical words in insurance policies does not control. *Stafford, supra; Adams, supra.*

"[T]he objective is to determine the intent of the parties, and this is to be drawn from the language employed." *Stafford, supra.*

Hocker emphasizes that gasoline is not one of the specifically enumerated irritants or contaminants included in the policy definition of "pollutants." Hocker argues that, under the circumstances of this case, a layperson engaged in the business of operating gasoline stations who acquired Ranger's policy would not understand that damages it might incur because of a discharge of gasoline from its storage tanks would not be covered by the policy of insurance. Hocker suggests that a reasonable person engaged in the gasoline business would not pay a substantial premium for a liability policy that failed to provide coverage for these types of claims; that the absurdity of a reasonable layperson acquiring a policy of insurance under these circumstances is enhanced by Ranger's marketing this particular policy through its "Gasoline Department."

Ranger responds by citing cases in which insureds' claims have been denied based on pollution exclusions with the same or similar language to that in the insurance policy in this case. Cases on which Ranger relies involve gasoline and other substances. The cases involving substances other than gasoline are not particularly helpful. As *Continental Casualty Co. v. Rapid–American Corporation,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 512 (1993), (involving asbestos-related liabilities) suggests, "Clauses can, of course, be ambiguous in one context and not another."

Cases that Ranger cites from appellate courts in other jurisdictions involving gasoline leaks include *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 231 Ga.App. 89, 498 S.E.2d 572 (1998); *Millers Mut. Ins. of Illinois v. Graham Oil Co.*, 282 Ill. App.3d 129, 218 Ill.Dec. 60, 668 N.E.2d 223 (1996); *Legarra v. Federated Mut. Ins. Co.*, 35 Cal.App.4th 1472, 42 Cal.Rptr.2d 101 (1995); and *Crescent Oil Co. v. Feder-*

*ated Mut. Ins. Co.,* 20 Kan.App.2d 428, 888 P.2d 869 (1995). Each case held, under its particular facts, that property damage caused by gasoline leaks from storage tanks was not covered; that a pollution exclusion precluded coverage. The cases, however, did not view the language in the respective exclusions "in light of 'the meaning that would ordinarily be understood *by the layman who bought and paid for the policy,*'" as Missouri courts must do. *Robin v. Blue Cross Hosp. Service, Inc.,* 637 S.W.2d at 698, quoting *Stafford v. Travelers Ins. Co.,* 530 S.W.2d at 25 (emphasis added).

In *Truitt Oil & Gas Co.* the Georgia court relied on the definition of "gasoline" in Webster's Ninth New Collegiate Dictionary, 1991, finding it was "a volatile flammable liquid hydrocarbon mixture blended from natural gas and petroleum." 498 S.E.2d at 574. It concluded gasoline was a "liquid or gaseous contaminant." *Id.* On that basis it found that gasoline was a pollutant.

In *Millers Mut. Ins. of Illinois* an insured argued that its insurance policy (containing a pollution exclusion with the same provisions as the one in this case) was designed to provide liability coverage for gas station operations; that it "should not be read to exclude coverage for occurrences common to the trade." 218 Ill.Dec. 60, 668 N.E.2d at 228. The Illinois court found, nevertheless, that the pollution exclusion precluded coverage. It acknowledged *American States Insurance Co. v. Kiger, supra,* in reciting the insured's argument, but did not discuss the case. The *Millers Mutual* opinion stated that no Illinois court had addressed the issue. It stated that a number of other jurisdictions "found gasoline to be a pollutant within the meaning of the pollution exclusion." 218 Ill.Dec. 60, 668 N.E.2d at 228. Cases cited from "other jurisdictions" were a 1993 federal district court decision from the District of New Hampshire, and *Crescent Oil Co v. Federated Mut. Ins. Co., supra.*

*Legarra v. Federated Mut. Ins. Co.* involved land where a prior owner had a bulk plant for storage of petroleum products. Current owners negotiated a sale of the land. During the sales negotiations, Federated Mutual Insurance Co. issued a policy of liability insurance covering the property. The policy had pollution exclusion with the same language as the one in this case. The land was found to have "gasoline-stained soils," and wells on properties surrounding the tract where the bulk plant had been contained gasoline. The sale of the property was not closed. Its owners were advised that they might be responsible for reimbursing a government environmental agency for cleanup costs. Federated Mutual Insurance Co. denied liability based on the pollution exclusion. The California court, citing the federal district court decision in *Staefa Control–System v. St. Paul Fire & Marine,* 847 F.Supp. 1460, mod. 875 F.Supp. 656 (N.D.Cal.1994), held, without further analysis, that petroleum, either as a liquid or a gas, had been found to be an environmental contaminant or irritant. It held that the pollution exclusion precluded coverage.

The *Crescent Oil Co.* case involved a gasoline leak from an underground storage tank at a gasoline station and convenience store owned by an insured. The insurance policy had a pollution exclusion clause precluding coverage for damages "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time," or for "[a]ny loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants." *See* 888 P.2d at 871.

The policy in the *Crescent Oil Co.* case had the same definition of "pollutants" as the policy that is the subject of this appeal. The Kansas court stated, "Cases in some jurisdictions may have limited the scope of

the definition of pollutant under the exclusion in a number of ways." 888 P.2d at 872. It stated it was not constrained to do so. It declined to hold that the pollution exclusion applied only to active industrial pollution as the insured had contended. The Kansas court held, without further explanation, that "the policy definition of 'pollutants' includes gasoline which has escaped and caused contamination to neighboring property." *Id.* at 873. The Kansas court noted, however, that gasoline "is not a 'pollutant' until introduced into an environment in which it does not belong, *i.e.*, the soil." *Id.* at 874.

As previously stated, Missouri's criteria for determining whether an insurance policy's language is plain and unambiguous requires ascertainment of what the layman who acquired the policy of insurance would ordinarily have understood. In this light, Hocker's suggestion that it, as a layperson, would not have paid a substantial premium for a liability policy that would not afford coverage for damages resulting from gasoline leaks from its storage tanks is not unreasonable. Applying Missouri's criteria for determining if the policy language is ambiguous, this court finds the rationale of *American States Insurance Co. v. Kiger, supra,* persuasive. Gasoline is not identified, with particularity, as being a "pollutant" for purposes of the pollution exclusion in the insurance policy Hocker acquired from Ranger. Hocker could have reasonably concluded that gasoline was not deemed a pollutant for purposes of the exclusion since it was not specifically identified as such. As observed in *Kiger*, it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability. *See* 662 N.E.2d at 948.

Hocker is in the business of transporting, selling and storing gasoline on a daily basis. Gasoline is not a pollutant in its eyes. Gasoline is the product it sells. Gasoline belongs in the environment in which Hocker routinely works. As acknowledged in *Crescent, supra,* in that environment, gasoline is not a pollutant. Hocker was entitled to characterize gasoline in a manner consistent with its daily activities absent specific policy language to the contrary.[3] Ranger's failure to identify "gasoline" as a pollutant in its pollution exclusion resulted in uncertainty and indistinctness. The policy was, therefore, ambiguous as to whether gasoline was a pollutant for purposes of the exclusion. Being ambiguous, the policy provision is construed against Ranger.

The trial court did not err in finding the pollution exclusion in the Special Multi-Peril Policy Ranger sold Hocker was ambiguous. It is not necessary to address other issues in Ranger's Point I in view of that determination.[4] Point I is denied.

Ranger's Point II states the trial court erred in granting partial summary judgment to Hocker as to Count I because the trial court "failed to find that Ranger was prejudiced by [Hocker's] total failure to comply with certain policy conditions including the notice and cooperation provisions, where the insured failed, among other things, to notify Ranger of the Bay lawsuit until after a settlement had been reached."

3. As an aside, this court notes it is not the first court to find, in applying Missouri law, the pollution clause in question ambiguous, albeit the other court to do so was evaluating the clause with respect to a substance other than gasoline. *See Sargent Const. Co., Inc. v. State Auto. Ins. Co.,* 23 F.3d 1324 (8th Cir. 1994).

4. Point I in Ranger's opening brief also states that the pollution exclusion precludes coverage for "personal injury." Having determined that the policy's definition of "pollutants" does not include gasoline, that issue is not germane to this appeal. The point also asserts that Hocker's claim was precluded by the pollution exclusion in a separate "umbrella policy" it sold to Hocker, an issue not reached by the trial court. That issue is not before this court as part of these appeals.

Ranger's opening brief was filed December, 21, 1998. Missouri Rules of Court (1998), prescribes requirements for appellate briefs filed before January 1, 1999.[5] Rule 84.04(d) relates to "Points Relied On." It provides, "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder." *Sertoma Bldg. Corp. v. Johnson*, 857 S.W.2d 858, 859 (Mo.App.1993), explains, "Rule 84.04(d) requires 'points relied on' to state what action or ruling of the trial court is claimed to be erroneous, why it is erroneous, and what was before the trial court that would have supported taking the action that the party appealing contends should have been taken."

Although Ranger's Point II is anything but a model of conciseness and clarity, it satisfies the requirements of Rule 84.04(d). The trial court ruling Point II seeks to have reviewed is the granting of partial summary judgment on Count I in favor of Hocker. Point II contends the granting of the partial summary judgment was erroneous because the terms of the insurance policy that were the subject of Count I required Hocker to cooperate with Ranger and provide Ranger with "notice." It asserts that the material on which the summary judgment was based included information that Hocker failed to notify Ranger that Mr. and Mrs. Bay had filed suit before the lawsuit had been settled. Ranger claims that, based on Hocker's failure to timely notify it of the lawsuit Mr. and Mrs. Bay filed and Hocker's failure to cooperate with Ranger, the trial court should have found there was a fact issue as to whether Ranger was prejudiced by Hocker's noncompliance with terms of the insurance policy; that, therefore, partial summary judgment should not have been granted.

■ The argument that follows Point II includes the complaint that Hocker had access to statements or information concerning knowledge of witnesses that it did not provide Ranger. (However, the argument does not identify any witness or relate what knowledge any witness possessed.) That issue is not raised by the point relied on. Appellate review is limited to issues stated in an appellant's point. *Tindall v. Holder*, 892 S.W.2d 314, 322 (Mo.App.1994). Any question not there presented is deemed abandoned. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405 (Mo.1964). Further discussion of that argument is not warranted.

■ The claim in Point II that the insurance policy imposed a duty to notify Ranger if a lawsuit were filed is correct. The policy states that if a lawsuit is brought against the insured "the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." It is undisputed, however, that Ranger denied liability upon notice of the occurrence in question, the gasoline leak. The day after the leak occurred, on January 13, 1988, notice of the occurrence was sent to Ranger. Ranger received the notification January 18, 1988. Ranger responded by letter from a claims agent denying coverage. A copy of the "Pollution Exclusion" discussed with respect to Point I was attached to the letter.

Hocker thereafter received a letter from an attorney representing Mr. and Mrs. Bay asserting a claim against Hocker for damages that resulted from the January 12 release of gasoline. Hocker's attorney sent a letter to the insurance agency from which it had acquired the policy notifying it of the claim asserted by Mr. and Mrs. Bay. Hocker's attorney again asserted that the terms of the insurance policy provided coverage for any damages the Bays may have incurred. Ranger was requested to provide Hocker with definitions of "pollutant," "pollution" and "gasoline" on which

---

**5.** Rule 84.04 was amended May 15, 1998, effective January 1, 1999. That amendment was not yet effective when Ranger's brief was filed.

Ranger was relying. The letter from Hocker's attorney was forwarded to Ranger, together with the letter the Bays' attorney had sent Hocker's attorney. Ranger responded by again denying coverage. On April 22, 1988, the Bays filed suit.[6] In June 1990 the Bays and Hocker settled the suit.

Ranger does not deny that it had knowledge of the occurrence on which the Bays' claim against Hocker was based or that it had, on more than one occasion, denied liability based on the pollution exception in the policy of insurance. Ranger nevertheless contends that Hocker breached a duty imposed on it by the policy by not forwarding the petition from the Bays' lawsuit to it. Ranger argues this entitles it to relief because "an insurer's duty to defend is greater than its duty to provide coverage." Hocker asserts that it was entitled to ascertain if it had a duty to defend by reviewing the allegations in the petition. It relies on *Shelter Mut. Ins. Co. v. Shepherd*, 928 S.W.2d 6 (Mo.App.1996), and *Angelina Cas. Co. v. Pattonville–Bridgeton Terrace Fire Protection Dist.*, 706 S.W.2d 483 (Mo.App.1986), in support of these claims.

Both cases on which Ranger relies, *Shelter Mutual* and *Angelina Cas. Co.*, state the principle Ranger asserts—that the duty to defend is broader than the duty to pay a judgment. *Shelter*, 928 S.W.2d at 8; *Angelina*, 706 S.W.2d at 484. Both state that the duty to defend must be ascertained from the policy and the petition filed in a particular lawsuit. *Id.* Those recitations stem from *Butters v. City of Independence*, 513 S.W.2d 418 (Mo.1974). *See Angelina Cas. Co.*, 706 S.W.2d at 484.

In *Butters* the petition stated some grounds of liability covered by the insurance policy in question and some that were not covered by the terms of the policy. The insurer in *Butters* offered a defense with a reservation of right to contest whether or not any judgment ultimately entered would fall within policy coverage. The insurer was unwilling to identify what circumstances of recovery it contended was beyond the coverage its policy provided. *Butters* held that, under those circumstances, the city was not required to accept the qualified defense that was tendered. It is in this context that the *Butters* opinion proclaimed the petition must be looked to in determining if there is a duty to defend.

*Butters* cites *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo. banc 1968), as authority for its statement that a petition must be looked to for establishment of an insurer's obligation to defend under a policy it has issued. In *Zipkin* the court observed, "Ordinarily the insurer's duty to defend is determined from the policy provisions and the allegations of the petition." *Id.* at 754. That pronouncement was qualified, however, with the statement that the insurer could not safely ignore actual facts known to it or which should have been known from reasonable investigation. *Zipkin* was a medical malpractice case in which a psychiatrist's insurer declined to provide a defense on the basis that the acts of which the insured was accused did not involve professional services rendered by him in the practice of his profession. The court held that the accusations made against the insured, although extreme, reflected a failure to provide requisite professional services; that damages attributable to those failures were within the policy coverage and there existed a duty to defend.

In this case, unlike in *Butters* and in *Zipkin*, the issue is not whether some grounds on which Hocker sought recovery were covered by the policy and some were not. The issue was whether the pollution exclusion in the insurance policy acquired from Ranger excluded leakage of gasoline

---

**6.** The attorney who represented Hocker at that time testified by deposition that he contacted Ranger by telephone to notify them that Hocker was being sued. He stated he did not recall when he made the call or to whom he spoke. He did not recall if the call occurred before or after the lawsuit was filed.

from Hocker's storage tank. The gasoline leakage was the basis for the lawsuit Mr. and Mrs. Bay initiated against Hocker. Ranger explicitly denied coverage for that loss. Under these facts tendering the petition filed by the Bays to Ranger would have been useless. A party is not required to do a useless act. *Darr v. Structural Systems, Inc.*, 747 S.W.2d 690, 694 (Mo. App.1988); *Randolph v. Supreme Liberty Life Ins. Co.*, 215 S.W.2d 82, 83 (Mo.App. 1948). Point II is denied.

Ranger's Point III asserts the trial court erred in awarding Hocker prejudgment interest from the date the damages were incurred; that Hocker was entitled to prejudgment interest only from the date it demanded payment by Ranger. Point III further asserts the trial court erred in allowing recovery of cleanup costs associated with the property Hocker owned at the time the gasoline leakage occurred.

Section 408.020 [7] states:

Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

■ The insurance policy was a written contract. Hocker was entitled to prejudgment interest after moneys became due and payable. *Weinberg v. Safeco Ins. Co. of Illinois*, 913 S.W.2d 59, 62 (Mo.App.

1995).[8] The general rule is that prejudgment interest is not allowed on an unliquidated demand, *see Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 6 (Mo. banc 1987); however, exact calculation of a claim is not necessary for a claim to be liquidated. *Weinberg, supra.*

■ In this case, the trial court awarded prejudgment interest calculated as of the dates of invoices or the dates when Hocker paid expenses it had incurred. At the time Hocker made payments or received invoices for expenses it was entitled to recover from Ranger, the amounts were ascertainable and, therefore, liquidated. Payment of interest was required. *Stillwell v. Universal Const. Co.*, 922 S.W.2d 448, 458 (Mo.App.1996).

■ Ranger further claims in its Point III that Hocker was not entitled to recover clean-up costs associated with its own premises; that any recovery was limited to clean-up costs associated with the adjoining property affected by the gasoline leakage. Ranger relies on exclusion (k) in its Special Multi–Peril Policy that provides the insurance provided by the policy does not apply:

(k) to **property damage** to

(1) property owned or occupied by or rented to the **insured,**

(2) property used by the **insured,** or

(3) property in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control. . . .

■ Hocker's insurance policy provides liability coverage for property damage. Environmental response costs are "damages" covered under insurance liability contracts. *Farmland Industries, Inc.*

7. References to statutes are to RSMo 1994.

8. As observed in *Jones v. Ohio Cas. Ins.,* 869 S.W.2d 288, 289 (Mo.App.1994), dicta in *DeLisle v. Cape Mutual Ins. Co.,* 675 S.W.2d 97, 104–05 (Mo.App.1984), suggested written demand or request was a condition precedent to recovery of pre-judgment insurance contracts. This court concludes, consistent with *Wein-*

*berg, supra,* and *Jones,* that no showing of written demand or request was required of Hocker. This court notes, nevertheless, that Hocker notified Ranger and repeatedly sought coverage for the January 13, 1988, gasoline release commencing only a few days after the release occurred.

*v. Republic Ins. Co.,* 941 S.W.2d 505, 512 (Mo. banc 1997); *Superior Equipment Co. v. Maryland Casualty Co.,* 986 S.W.2d 477, 483 (Mo.App.1998). Ranger did not assert to the trial court that a portion of damages represented cleanup costs of property owned by Hocker. Ranger stipulated as to the principal amount of damages (that included cleanup costs) after the trial court concluded summary judgment was warranted as to liability. "An issue not presented before the trial court is barred from being raised as a defense for the first time on appeal." *E.D. Mitchell Living Trust v. Murray,* 818 S.W.2d 326, 329 (Mo.App.1991). Point III is denied.

Ranger's Point IV is directed to Hocker's cross-appeal. It will be addressed with respect to the appeal in No. 22553.

### *Hocker's Appeal—No. 22553*

Hocker presents one allegation of error in its cross-appeal, its Point V. Its other points are responses to the allegations of error in Ranger's appeal. Hocker's Point V asserts the trial court erred in granting summary judgment for Ranger on Count II of Hocker's petition, its claim for damages for vexatious delay by Ranger in paying claims.

Ranger's Point IV is directed to Hocker's cross-appeal. Hocker's allegation of error is directed to the trial court's "granting Ranger Insurance's Motion for Summary Judgment ... because Ranger Insurance's denial of coverage was vexatious and without reasonable excuse...." Ranger's Point IV contends Hocker's appeal is from the order that granted summary judgment rather than from the summary judgment; that the cross-appeal should be dismissed "because only a final judgment is appealable and because [Hocker's] appeal is untimely."

Hocker's "Notice of Cross–Appeal" states it is appealing from "[o]nly that portion of 'Partial Summary Judgment Order' granting summary judgment in favor of Ranger and against Hocker on Count II of the First Amended Petition for vexa-

tious refusal." A copy of the Partial Summary Judgment Order was attached to the notice. The notice states the date of judgment as July 14, 1998, the date judgment was entered. (The partial summary judgment order was entered January 13, 1998.)

Hocker's appeal is directed to the summary judgment entered for Ranger on Count II of Hocker's petition. The designation on Hocker's notice of appeal of the "Partial Summary Judgment Order" was obviously a good faith effort to appeal the judgment. It will be so treated. *See Kipper v. Vokolek,* 546 S.W.2d 521, 523 (Mo. App.1977).

Judgment was entered July 14, 1998. Ranger filed its notice of appeal August 19, 1998. Rule 81.04(b) provides, "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date the first notice of appeal was filed." Rule 44.01(a) states, in applicable part:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.

Ten days after the date of filing of Ranger's notice of appeal was August 29, 1998, a Saturday. Hocker was allowed until Monday, August 31, 1998, in which to file its notice of cross-appeal. It did so on that date. Thus, Hocker's notice of cross-appeal was timely filed.

Hocker's Point V contends Ranger's denial of coverage, under the facts of this case, "was vexatious and without reasonable excuse." Hocker's claim against Ranger for vexatious refusal to pay damages without reasonable excuse was based on § 375.420. It permits recovery of dam-

ages within stated limits if, in an action against an insurance company to recover the amount of any loss on, among other types of coverage, a liability policy, "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse."

 The test for a vexatious refusal claim is not the final determination of the coverage dispute. It is how willful and unreasonable the insurer's refusal to pay would appear to a reasonable and prudent person at the time coverage was requested. *Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 55 (Mo.App.1998). Or, as stated in *Katz Drug Co. v. Commercial Standard Ins.,* 647 S.W.2d 831, 839 (Mo.App. 1983), "To support the imposition of the penalty, [a claimant] must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person prior to trial."

*Wood* explains:

"When there is an open question of law or fact the insurer may insist upon a judicial determination of those questions without being penalized." *Oliver v. Cameron Mut. Ins. Co.,* 866 S.W.2d 865, 870 (Mo.App. E.D.1993). A litigable issue exists, for instance, when there are no Missouri cases directly addressing the coverage issue. *Webb v. Hartford Casualty Ins. Co.,* 956 S.W.2d 272, 276 (Mo.App. W.D.1998). A subsequent court decision adverse to the insurer's position is not a sufficient reason for imposing the penalty. *Groves [v. State Farm Mut. Auto. Ins. Co.],* 540 S.W.2d [39] at 42 [ (Mo. banc 1976) ]. The existence of a litigable issue will, however, not preclude a penalty if the insurer's attitude is shown to be vexatious and recalcitrant. *Pace Properties, Inc. [v. American Mfrs. Mut. Ins. Co.],* 918 S.W.2d [883] at 888[ (Mo.App. E.D. 1996) ].

980 S.W.2d at 55.

 The trial court did not abuse its discretion in granting summary judgment to Ranger on Hocker's claim for vexatious refusal to pay. There were no Missouri cases that directly addressed the coverage issue presented by Hocker's claim. A litigable issue existed. Under the circumstances that existed at the time Hocker's claim was made, Ranger's denial of that claim was not unreasonable. Hocker's Point V is denied.

### Disposition of Appeals

The judgment is affirmed in No. 22552 and No. 22553.

PREWITT, P.J., and CROW, J., concur.