**STEVE SPICER MOTORS, INC., Appellant,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Respondent.**

**No. 15554.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 30, 1988.

David C. Ruyle, Ruyle & Sims, of Neosho, for appellant.

Ronald G. Sparlin, Blanchard, Van Fleet, Martin, Robertson & Dermott, of Joplin, for respondent.

CROW, Presiding Judge.

Steve Spicer Motors, Inc. ("Spicer") sued Federated Mutual Insurance Company ("Federated") for $13,984, the sum allegedly expended by Spicer for attorney fees and expenses in defending itself against an action brought in the United States District Court, Western District of Missouri, by one Erman Jay under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634. Spicer averred Federated was obligated by two insurance policies—a "garage policy" and a "commercial umbrella liability policy"—to defend Spicer in the Jay suit but refused to to do so despite demand by Spicer. The case was submitted to the trial court without a jury on stipulated facts. Judgment was entered in favor of Federated. Spicer appeals.

The provisions of the *garage policy* pertinent to the issues before us are:

"**'Accident'** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** ... the **insured** neither expected nor intended.

**'Bodily injury'** means bodily injury, sickness or disease including death resulting from any of these.

**'Garage operations'** means the ownership, maintenance or use of locations for garage business.... Garage operations also include all operations necessary or incidental to a garage business.

[Federated] will pay all sums the **insured** legally must pay as damages because of **bodily injury** ... to which this insurance applies caused by an **accident** and resulting from **garage operations.**

[Federated has] the right and the duty to defend any suit asking for these damages. However, [Federated has] no duty to defend suits for **bodily injury** ... not covered by this policy."

The provisions of the *commercial umbrella liability policy* pertinent to the issues before us are:

"[Federated] hereby agrees ... to pay on behalf of the **Insured** all sums which the **Insured** shall be obligated to pay by reason of the liability

(a) imposed upon the **Insured** by law

...."

for **ultimate net loss** on account of: (a) **personal injury,**

....

caused by or arising out of each occurrence happening anywhere in the world, during the policy period.

With respect to any occurrence not covered by ... underlying insurance ... applicable to the **Insured,** but covered by this policy ... [Federated] will, in addition to the amount of the **ultimate net loss** payable:

(a) defend any suit against the **Insured** seeking damages on account of **personal injury** ... even if any of the allegations of the suit are groundless, false or fraudulent....

The term 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in **personal injury** ... neither expected nor intended from the standpoint of the **Insured.**

The term 'personal injury' means:

(a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury;

....

(e) racial, religious or sex discrimination not committed by or at the direction of the **Named Insured,** unless insurance therefor is prohibited by law; ...."

Spicer was the named insured in both policies, and both were in effect at all times pertinent herein.

On October 15, 1984, Erman Jay filed the suit referred to in the first paragraph of this opinion. Jay's complaint alleged, among other things, that his action was brought under 29 U.S.C. § 626(b) and (c), provisions of the Age Discrimination in Employment Act, and 29 U.S.C. § 216(b), a provision of the Fair Labor Standards Act. The complaint further alleged that in November, 1982, Jay was employed by Spicer, that Jay was fully qualified for his job and was performing his duties in a satisfactory manner, that Spicer willfully terminated Jay November 11, 1982, solely because of his age (over 40 years), that since his termi-

nation Jay had not been steadily employed, that such employment as Jay had obtained had been at a lesser salary than he earned from Spicer, that Jay had been damaged by Spicer's "wrongful termination," and that Jay was entitled to liquidated damages and attorney fees. Jay's complaint prayed for judgment for reinstatement of his job, monetary damages of $50,000 plus liquidated damages in an equal amount, and for attorney fees and costs.

By letter of November 7, 1984, Spicer's attorney forwarded a copy of Jay's complaint to Federated, demanding that Federated provide a defense to the Jay suit.

Federated's claims supervisor replied by letter of December 14, 1984, that inasmuch as the allegations of Jay's complaint did not plead bodily injury or property damage as defined in the garage policy, Jay's alleged loss would not be covered under such policy. Additionally, said the supervisor, the type of discrimination alleged by Jay (discrimination based on age) was not a type of discrimination for which coverage was provided under the commercial umbrella liability policy. Therefore, concluded the supervisor, Federated "will be unable to provide any defense or take any further handling of this claim."

Jay's suit against Spicer was ultimately tried by jury, and in a "special verdict" returned October 24, 1986, the jury declared it did not believe Jay's age was a determining factor in Spicer's decision to fire him. Pursuant to the verdict, the United States District Court entered judgment in favor of Spicer.

By letter of November 20, 1986, Spicer's attorney notified Federated of the outcome of the Jay suit and stated that Spicer, in the defense of that action, had incurred the attorney fees and expenses set forth in the first paragraph of this opinion. The letter demanded reimbursement of that amount. Federated rejected the demand, whereupon Spicer commenced the instant action.

The trial court, in a judgment unadorned with conclusions of law (none having been requested), ruled in favor of Federated.

The first of Spicer's two assignments of error is:

"The trial court erred in granting judgment to [Federated] on the grounds that the insurance contract between the parties provided no coverage for the allegations contained in Erman Jay's ... complaint because such allegations state a claim which is potentially or argueably [sic] within the coverage of such insurance policy and, therefore, [Federated] was required to provide a defense to such ... complaint."

As the point does not identify which policy Spicer is referring to, and the argument portion of Spicer's brief quotes provisions of both, we shall determine whether either policy imposed a duty on Federated to defend Spicer in the Jay suit.

■ Ordinarily an insurer's duty to defend is determined from the provisions of the policy and the allegations of the petition charging liability of the insured. *Zipkin v. Freeman*, 436 S.W.2d 753, 754[1] (Mo.banc 1968); *Angelina Casualty Co. v. Pattonville–Bridgeton Terrace Fire Protection Dist.*, 706 S.W.2d 483, 484 (Mo.App. 1986); *Travelers Insurance Co. v. Cole*, 631 S.W.2d 661, 665 (Mo.App.1982). If the petition against the insured alleges facts not within the coverage of the insurance policy, no duty devolves upon the insurer to defend. *Travelers*, 631 S.W.2d at 665[7]; *Hawkeye–Security Insurance Co. v. Iowa National Mutual Insurance Co.*, 567 S.W. 2d 719, 721[3] (Mo.App.1978).

Spicer, as we comprehend its brief, concedes Federated was obliged to provide a defense in the Jay suit only if Jay's complaint potentially or arguably stated a claim for "bodily injury" as defined in the garage policy, or a claim for "personal injury" as defined in the commercial umbrella liability policy. With respect to the latter policy, Spicer relies only on definition "(a)" of "personal injury," which defines such an injury as "bodily injury, sickness, disease, disability, shock, mental anguish and mental injury."

As noted earlier, Jay's complaint averred his action arose under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634. One provision of the Act, § 623, makes it unlawful for an employer (as de-

fined by § 630(b) of the Act) to discharge any individual because of such individual's age. Another provision of the Act, § 626(b), provides that the Act shall be enforced in accordance with the powers, remedies, and procedures provided in 29 U.S.C. § 216 (except subsection (a) thereof), and that amounts owing to a person as a result of a violation of the Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of § 216.

29 U.S.C. § 216(b) provides that an employer liable for unpaid minimum wages or unpaid overtime compensation, as the case may be, shall also be liable in an additional equal amount as liquidated damages. However, § 626(b) provides that liquidated damages shall be payable only in cases of willful violations of the Act.

Spicer acknowledges that Jay's complaint alleged a loss of wages, but insists that inasmuch as Jay's prayer was for "monetary damages," the specific nature of Jay's claim against Spicer was "at best incomplete." Consequently, argues Spicer, the allegations of Jay's complaint were insufficient to demonstrate that his claim was either within or without the coverage of the policies in question. In such circumstances, says Spicer, Federated was obligated to provide a defense.

We disagree. Jay's complaint clearly pled that after his employment was terminated by Spicer he had not been steadily employed, and that such employment as he had obtained had been at a lesser salary. Nothing in the complaint could have potentially or arguably been construed as an averment that the termination of his employment caused Jay any bodily injury as defined by the garage policy, i.e., bodily injury, sickness or disease, or that the termination of his employment caused Jay any personal injury as defined by the commercial umbrella liability policy, i.e., bodily injury, sickness, disease, disability, shock, mental anguish or mental injury.

As there was no coverage under the garage policy absent bodily injury as defined therein, and no coverage under the commercial umbrella liability policy absent personal injury as defined therein, it is unnec-

essary to consider Spicer's contention that its termination of Jay's employment could potentially or arguably have fallen within the definition of "accident" in the garage policy, or within the definition of "occurrence" in the commercial umbrella liability policy. Spicer's first point is denied.

Spicer's second point is:

"The trial court erred in granting judgment to [Federated] because there is an ambiguity between the primary policy and the umbrella policy with respect to insurance coverage of the allegations raised in [Jay's complaint] and such ambiguity must be interpreted in favor of [Spicer]."

As the point furnishes no hint as to what the alleged ambiguity is, we have searched the argument portion of Spicer's brief for a clue. As we deduce it, the import of Spicer's second point is that coverage under the commercial umbrella liability policy can exist only with respect to an "occurrence" not covered by underlying insurance. The garage policy, however, affords coverage for bodily injury caused by "accident," not by an "occurrence."[3] Thus, says Spicer, "The act leading to coverage under the umbrella policy is susceptible to two different interpretations and is therefore ambiguous."

Having decided in connection with Spicer's first point that nothing in Jay's complaint could have potentially or arguably been construed as an averment that the termination of his employment caused him any bodily injury as defined by the garage policy, or any personal injury as defined by the commercial umbrella liability policy, and consequently neither policy imposed a duty on Federated to defend Spicer against Jay's complaint, it is unnecessary to consider Spicer's second point.

Judgment affirmed.

HOLSTEIN, C.J., and PREWITT, J., concur.

GREENE, J., not participating.