SARGENT CONSTRUCTION COMPANY, INC., Plaintiff–Appellant,

v.

STATE AUTO INSURANCE COMPANY, Defendant–Appellee.

No. 93–2529.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1994.

Decided May 4, 1994.

Maurice Graham, Fredericktown, MO, argued (Mike D. Murphy, on the brief), for appellant.

Richard Steele, Cape Girardeau, MO, argued, for appellee.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.

KYLE, District Judge.

Sargent Construction Company ("Sargent") appeals the district court's decision granting summary judgment in favor of State Auto Insurance Company ("State Auto"). Sargent contends that the district court erred in determining that the definition of "pollutant" in the Commercial General Liability policy was unambiguous. We reverse and remand.

*Background*

On January 3, 1992, Sargent was engaged in a construction project for its client, Town and Country Supermarkets ("T & C"), at a T & C location in Piggott, Arkansas. As part of the project, Sargent needed to level a steel-troweled concrete floor. For that purpose, Sargent used a product called Flo–Top. The instructions for Flo–Top provided that, before applying that product to steel-troweled concrete, one must etch or "rough up" the floor surface with acid to make a suitably textured surface.

Sargent used a twenty-percent solution of muriatic acid to etch the floor.[1] Fumes from the muriatic acid reacted with and corroded the chrome portions of various fixtures on or about the job site, including but not limited to shelving and freezer cases owned by T & C. The fumes caused approximately $75,-000.00 in property damage. T & C informed Sargent that it intends to hold Sargent responsible for the damaged fixtures.

Sargent submitted a loss claim to State Auto, its insurer. State Auto denied coverage, concluding that muriatic acid is a "pollutant" and the event at the construction site therefore fell within the scope of the "pollution exclusion" clause in Sargent's Commercial General Liability policy. The policy State Auto issued to Sargent provides coverage for bodily injury and property damage liability. That coverage is subject to a number of exclusions, including the following "pollution exclusion":

2. Exclusions. This insurance does not apply to:

\* \* \* \* \* \*

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working

---

* The HONORABLE RICHARD H. KYLE, United States District Court Judge for the District of Minnesota, sitting by designation.

1. Etching concrete floors in this manner is commonly done in the construction industry.

directly or indirectly on the insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Sargent filed a declaratory judgment action against State Auto in Missouri state court. State Auto removed the suit to federal district court based on diversity of citizenship and the proper jurisdictional amount in controversy. State Auto subsequently moved for summary judgment, contending that muriatic acid is a "pollutant" as defined under the policy and therefore this event falls within the exclusion provision of the policy.

In support of its motion, State Auto offered the affidavit of Dr. Ronald Popham, a chemistry professor at Southeast Missouri State University. In his affidavit, Dr. Popham stated that muriatic acid is an acid and a chemical whose use is accompanied by vapor and fumes. Dr. Popham concluded that muriatic acid is a liquid irritant and contaminant. In opposition to the motion, Sargent offered the affidavits of two members of the construction industry who contended that they would not classify muriatic acid as a "pollutant" when used in the customary manner.

The district court granted the summary judgment motion, holding that there were no genuine issues of material fact as to the application of the pollution exclusion clause and that the use of muriatic acid fell within that exclusion. The district court determined that both the policy's definition of "pollutants" and the exclusion clause relating to pollutants were clear and unambiguous. Judgment was entered in favor of State Auto dismissing Sargent's cause of action. Sargent timely filed this appeal.

### Discussion

■ We review summary judgment decisions de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir. 1992). The question before the district court, and this Court on appeal, is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* We similarly review a district court's determination of state law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). Whether the language of an insurance policy is ambiguous is a question of state law. *See West v. Jacobs*, 790 S.W.2d 475, 480 (Mo.Ct.App. 1990).

■ Missouri law regards insurance policies as contracts to which the rules of contract construction apply. *Peters v. Employers' Mut. Casualty Co.*, 853 S.W.2d 300, 301–02 (Mo.1993). When an insurance policy is ambiguous, a court shall construe it using contractual rules of construction.[2] *American Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo.1990). Furthermore, if an insurance policy is ambiguous, the policy shall be construed against the insurer.[3] *Robin v.*

2. If the policy is not ambiguous, the court cannot construe it, but must enforce the express terms of the policy as it is written. *Hempen v. State Farm Mut. Auto. Ins. Co.*, 687 S.W.2d 894, 894 (Mo. 1985).

3. The Missouri Supreme Court has identified two primary reasons for this rule of construction. First, insurance is designed to furnish protection to the insured, not defeat it. Ambiguous provisions of a policy designed to cut down,

restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer. Second, as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract.
*Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210–11 (Mo.1992) (citations omitted).

*Blue Cross Hosp. Serv. Inc.*, 637 S.W.2d 695, 698 (Mo.1982).

An ambiguity in an insurance contract arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo.1992); *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo.1991). Language is ambiguous if it is reasonably open to different constructions. *Robin*, 637 S.W.2d at 698. If there is a conflict between a technical definition within a contract and the meaning which would reasonably be understood by the average layperson, a layperson's definition will be applied unless it plainly appears that the technical meaning is intended. *Robin*, 637 S.W.2d at 698; *see also Rodriguez*, 808 S.W.2d at 382. In addressing the issue of ambiguity, the district court focused on whether a technical definition or a layperson's understanding of the term "pollutants" applied. State Auto contended that the term "pollutants" is specifically defined in the contract and that definition is binding. Sargent offered the affidavits of members of the construction industry to demonstrate that laypersons in the construction business would not consider muriatic acid to be a "pollutant." The district court concluded that the parties intended to apply the technical meaning of "pollutants," as set forth in the contract; the court then determined that the technical definition was unambiguous.[4]

The policy's definition of "pollutants" equates that term with "any solid, liquid, gaseous or thermal irritant or contaminant;" it then lists numerous examples of such substances. Upon application of this definition to a particular substance, the true issue becomes whether that substance can be classified as an "irritant or contaminant." In the context of a claim for bodily injury or property damage under this commercial general liability policy, the phrase "irritant or contaminant" is susceptible of more than one meaning. A substance could be described as an "irritant or contaminant" because it *in fact* has caused physical irritation, resulting in bodily injury, or contaminated the environment, causing property damage. The same substance could also be deemed an "irritant or contaminant" because it has the *capability* of causing physical irritation or contaminating the environment, regardless of whether the accident giving rise to the specific claim involved such harm.[5] Accordingly, we hold that the policy's definition of "pollutants" is ambiguous. The district court erred as a matter of law in reaching a contrary conclusion and granting summary judgment to the defendant.

### Conclusion

For the foregoing reasons, we vacate the district court's entry of summary judgment for the defendant and remand for further proceedings consistent with the principles of insurance policy construction set forth in this opinion.[6] *See Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208 (Mo.1992).

4. "The Court does not disagree that in common usage or within the construction industry, muriatic acid is not normally considered to be a 'pollutant.' However the Court cannot apply the layperson's definition of a word when it plainly appears that the technical meaning is intended." *Sargent Constr. Co. v. State Auto Ins. Co.*, No. 1:92CV79SNL, at 8 (E.D.Mo., filed May 21, 1993).

5. Dr. Popham's affidavit states simply that muriatic acid is a "liquid irritant and contaminant" without providing any context for that conclusion. Dr. Popham may have been speaking in terms of the specific facts of this case or he may have been speaking in terms of the general characteristics of the substance.

6. In light of our determination that the policy's definition of "pollutants" is ambiguous, it is not necessary to reach the trial court's determination that the "pollution exclusion" applied to this claim.