**CASUALTY INDEMNITY EXCHANGE, a Missouri reciprocal insurance company,[1] Appellant,**

**v.**

**CITY OF SPARTA, Missouri, a municipal corporation, and Edwin Roller and Paula Roller, Respondents.**

No. 22675.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 10, 1999.

---

1. In *Angoff v. Casualty Indemnity Exchange,* 963 S.W.2d 258, 259–60 (Mo.App. W.D.1997), the court characterized Casualty Indemnity Exchange as a reciprocal insurance exchange governed by §§ 379.650–.800, RSMo 1994, and described the nature of such an association.

Duane E. Schreimann, Christopher P. Rackers, Hendren and Andrae, L.L.C., Jefferson City, for appellant.

James L. Bowles, Ozark, for respondent City of Sparta, Missouri.

Stuart H. King, Joseph S. Dressner, William H. McDonald & Associates, Springfield, for respondents Edwin Roller and Paula Roller.

Joe B. Whisler, Rodney A. Ames, Cooling & Herbers, P.C., Kansas City, for *amicus curiae* Insurance Environmental Litigation Association.

JOHN C. CROW, Presiding Judge.

Casualty Indemnity Exchange ("CIE") appeals from a judgment declaring an insurance policy issued by it: (a) provides coverage to the City of Sparta ("Sparta") for claims against Sparta in a lawsuit by Edwin Roller and Paula Roller ("Rollers"), and (b) requires CIE to defend Sparta and indemnify it for any judgment against it in favor of Rollers, subject to the policy limits. CIE maintains there are two exclu-

sions in the policy, each of which bars coverage.

This opinion henceforth refers to Rollers' lawsuit as "the underlying suit." Sparta is one of three defendants in the underlying suit; the other two are Gary Braden and Fred Braden ("Bradens").

■ Ordinarily, an insurer's duty to defend its insured is determined from the policy provisions and the allegations of the petition filed by the party suing the insured. *Zipkin v. Freeman*, 436 S.W.2d 753, 754[1] (Mo. banc 1968). *Accord: Steve Spicer Motors, Inc. v. Federated Mutual Ins. Co.*, 758 S.W.2d 191, 193[1] (Mo.App. S.D.1988). Consequently, the next four paragraphs of this opinion, consecutively numbered, set forth the pertinent allegations in Rollers' second amended petition in the underlying suit.[2]

1. Rollers operate a dairy farm. Sparta owns and operates a wastewater treatment facility where solid components are removed from wastewater in the form of sludge.

2. Bradens own land and conduct a farming operation adjacent to Rollers' farm. Sparta gave or sold sludge to Bradens who, in cooperation with Sparta, applied the sludge to Bradens' land as a fertilizer or soil supplement during 1989 to 1991.

3. The sludge contained "substances and compounds, toxic to humans and animals, i.e., fluoride, cadmium, lead, mercury, iron, arsenic, aluminum, selenium and molybdenum." Said substances and compounds migrated from Bradens' land to Rollers' farm, causing damage including diminished milk production, death of cows and loss of breeding opportunity.

4. Sparta and Bradens failed to control, clean up or abate the existence of the

---

2. At the time CIE filed its petition for declaratory judgment, the underlying suit was pending on Rollers' second amended petition. Rollers' allegations against Sparta are inter-

twined with Rollers' allegations against Bradens, hence this opinion necessarily recites some of Rollers' averments against Bradens.

substances and compounds on Rollers' farm.

Rollers' second amended petition predicated liability against Sparta on three theories: negligence (Count I); res ipsa loquitur (Count III); private nuisance (Count IV). The other counts predicated liability against Bradens on sundry theories.

Sparta is the named insured in a "Special Custom Package Policy" issued by CIE. The policy, bearing number SR 3044, is henceforth referred to as "Policy 3044." It provides "Comprehensive General Liability" coverage for Sparta; consequently, Sparta demanded that CIE defend Sparta in the underlying suit.

Upon examining Rollers' second amended petition, CIE determined two exclusions in Policy 3044, each independently of the other, barred coverage for Sparta against Rollers' claim. CIE thereupon commenced the instant action by filing a petition for declaratory judgment against Sparta and Rollers. CIE prayed the trial court to declare that CIE had no duty to defend Sparta against Rollers' claim and no duty to indemnify Sparta for any judgment that might be rendered against it in the underlying suit.

The trial court heard testimony from four witnesses and thereafter entered judgment as described in the first paragraph of this opinion. This appeal followed.

Consistent with its position in the trial court, CIE maintains in this appeal that two exclusions in Policy 3044 bar coverage. One of the exclusions appears on an attachment to Policy 3044 denominated "Form 091087." It reads, in pertinent part:

"POLLUTION HAZARD EXCLUSION

. . . .

It is agreed that the company shall have no obligations under this insurance:

1.  to investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to person or property which arises out of or would not have occurred but for the pollution hazard; or

2.  to pay any damages, judgments, settlements, or loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law and relating to such injury or damage.

As used in this endorsement, 'pollution hazard' means an actual exposure or threat of exposure to the corrosive toxic or other harmful properties of any solid, liquid, gaseous or thermal pollutants, contaminants, irritants or toxic substances, including smoke, vapors, soot, fumes, acid or alkalis, and waste materials consisting of or containing any of the foregoing."

The parties refer to the above exclusion as the "Absolute Pollution Exclusion." For convenience, so shall this opinion.

The first of CIE's two points relied on avers the trial court erred in "finding coverage of Sparta" under Policy 3044 in that the Absolute Pollution Exclusion bars coverage because Rollers' second amended petition pleads damage "from the spreading of toxic substances, thereby fitting squarely within the Absolute Pollution Exclusion ... which excludes coverage for damages arising out of a pollution hazard, which includes the exposure to toxic substances." [3]

3.  Citing Rule 84.05(f), Missouri Rules of Civil Procedure (1999), an entity identifying itself as the "Insurance Environmental Litigation Association" ("IELA") moved for, and received, leave from this court to file an *amicus curiae* brief in support of CIE. Describing

itself as a "trade association of major property and casualty insurance companies which was formed, in part, to appear in environmentally related insurance coverage cases, and to assist courts in determining important insurance coverage questions," IELA pro-

The general principles governing this court's adjudication of the above point are well established. An appellate court will affirm a declaratory judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *McDermott v. Carnahan*, 934 S.W.2d 285, 287[1] (Mo. banc 1996). Exclusionary clauses in insurance policies are strictly construed against the insurer. *Kearbey by Kearbey v. Kinder*, 972 S.W.2d 575, 578[11] (Mo.App. S.D.1998); *Killian v. Tharp*, 919 S.W.2d 19, 21[4] (Mo.App. E.D. 1996). When an insurer seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish applicability of the exclusion. *Safeco Ins. Co. of America, Inc. v. Wood*, 948 S.W.2d 182, 183[3] (Mo.App. E.D.1997); *American Family Mutual Ins. Co. v. Copeland–Williams*, 941 S.W.2d 625, 627[2] (Mo.App. E.D.1997).

With commendable industry, the parties cite a multitude of cases where courts have been compelled to decide whether an exclusion in a liability insurance policy barred coverage of a claim against an insured for damages allegedly caused by a harmful substance. As one might expect, the exclusions in the policies in those cases vary in their wording and the facts are infinite in variety. About all that can be gleaned from those cases is that courts microscopically examine exclusions and assiduously study facts to determine whether a particular exclusion bars coverage for a specific claim.

A case factually analogous in some respects to the instant case is *City of Salina, Kansas v. Maryland Casualty Co.*, 856 F.Supp. 1467 (D.Kan.1994).[4] There, alkaline wastewater from the city's sewer backed up into a private residence. *Id.* at 1471. The occupants demanded compensation from the city for bodily injury and property damage, alleging the wastewater had "an elevated pH." *Id.* at 1472. The city had a liability insurance policy; the city demanded that the insurer defend the city and indemnify it for any damages recovered by the claimants. *Id.* The insurer rejected the city's demand, asserting coverage was barred by a proviso that excluded coverage for bodily injury or property damage caused by "pollutants." *Id.* The exclusion defined pollutants thus: "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste in-

claimed it sought "to provide a broad perspective on the environmental insurance coverage questions by highlighting to this Court the important issues at stake, as well as the public policy considerations that reinforce the sound legal principle that an insurance contract, like any other contract, must be construed according to its terms." Eager for guidance in this bewildering area of the law, this court opened IELA's brief and espied a statement of facts without any page reference to the legal file or transcript. When Rollers attacked IELA's brief by pointing out that Rule 84.04(i) requires that all statements of fact have specific page references to the legal file or transcript, IELA responded (without citation of authority) that Rule 84.04(i) "specifically applies to appellants' and respondents' briefs." Without deciding whether IELA is correct in apparently believing *amicus curiae* briefs are immune from Rule 84.04(i), this court humbly observes that where—as in IELA's brief—facts are misstat-

ed (as henceforth spelled out), the author of the brief might have gotten the facts straight by examining the record and citing, in the brief, the specific pages where the statements of fact could be verified. IELA's brief declared as a fact that Sparta sued CIE and the parties "cross-claimed for summary judgment." That assertion was wrong in three respects: (1) CIE sued Sparta and Rollers, (2) no party "cross-claimed," and (3) CIE sought a declaratory judgment, not summary judgment. When Rollers pointed out that litany of errors, IELA—instead of admitting its mistake—curtly replied: "To the extent that [Rollers] disagree with IELA's characterization of the facts, the Rollers certainly can respond and set forth their characterization in their brief."

4. CIE asseverates *City of Salina* is "identical" to the instant case. That averment is, put mildly, an exaggeration.

cludes materials to be recycled, reconditioned or reclaimed." *Id.* at 1473.

The claimants sued the city, which settled the suit when discovery revealed its employees were at fault. *Id.* at 1473. The city then demanded indemnity from the insurer for the amount the city paid in settlement, together with reimbursement for its defense costs. *Id.* The insurer denied the demand, whereupon the city sued the insurer. *Id.*

The court began by determining whether the wastewater was a pollutant. *Id.* at 1478. After an exhaustive discussion of the properties of the wastewater—which had a pH[5] of at least 12—the court concluded it was a pollutant as defined in the exclusion. *Id.* at 1478–79. The court explained that a substance with a pH of at least 12 is hazardous to individuals who come into contact with it. *Id.* at 1478. Consequently, it was an "irritant or contaminant" within the meaning of the exclusion. *Id.* Furthermore, the exclusion explicitly listed "alkalis" as a specific type of "irritant or contaminant," and the wastewater contained sodium hydroxide, an alkali. *Id.* Consistent with those conclusions, the court held the "pollution exclusion " applied, barring the claim from coverage. *Id.* at 1479.

*City of Salina* is analogous to the instant case in the following respects.

First, in *City of Salina* the damage was caused by a harmful substance in wastewater in the city's sewer; in the instant case the damage was allegedly caused by harmful substances in sludge removed from wastewater at Sparta's wastewater treatment facility.

Second, in both cases a municipality was engaged in collecting and disposing of wastewater generated in the municipality.

Third, in both cases the damage occurred when the harmful substance entered private property. In *City of Salina,* this occurred because of negligence; in the instant case, Sparta intentionally placed the substance on Bradens' land, whence it allegedly escaped to Rollers' farm.[6]

A chemistry professor, presented as a witness by CIE, told the trial court that all of the chemicals listed in Rollers' second amended petition[7] can be "toxic in given quantities." However, the professor conceded that sewage sludge "is by federal definition not hazardous material."

This court, comparing the Absolute Pollution Exclusion to Rollers' second amended petition and the abbreviated evidence, makes the following observations.

■ The Absolute Pollution Exclusion bars coverage for claims arising out of the "pollution hazard" which, insofar as pertinent here, is defined, *inter alia* as: " ... actual exposure ... to the ... toxic ... properties of any solid [or] liquid ... toxic substances, including ... waste materials ... containing any of the foregoing."

Rollers' second amended petition avers the sludge—waste material removed from wastewater by Sparta's wastewater treatment facility—contained substances toxic to humans and animals, which caused Rollers' damage.

The chemistry professor testified all nine chemicals listed in Rollers' second amended petition can be toxic in given quantities.

Inasmuch as (a) the Absolute Pollution Exclusion bars coverage for claims arising from actual exposure to the toxic properties of any solid or liquid toxic substances, including waste materials containing such substances, (b) Rollers pled the sludge contained substances toxic to humans and

---

5. An explanation of the symbol pH appears in Webster's Third New International Dictionary (Merriam–Webster Inc.1986) 1692.

6. Sparta's mayor testified Sparta, using a "1500–gallon tank," spread sludge on Bradens' sixty-acre alfalfa field. This court gathers from the mayor's testimony that about six acres of the field slope toward Rollers' farm.

7. Those chemicals are identified by name in paragraph number "3" earlier in this opinion.

animals which caused Rollers' damage, and (c) the professor testified the chemicals listed in Rollers' second amended petition can be toxic in given quantities, it appears to this court that Rollers' claim against Sparta is excluded from coverage under Policy 3044 by the Absolute Pollution Exclusion.

■ Respondents[8] maintain the Absolute Pollution Exclusion does not bar coverage because the professor conceded the sludge is, "by federal definition," not hazardous material.

That argument begs the question. The definition of "pollution hazard" in the Absolute Pollution Exclusion does not say a substance must be a hazardous material "by federal definition" in order to be a toxic substance. In that respect, the Absolute Pollution Exclusion is like the pollution exclusion in *Kruger Commodities, Inc. v. United States Fidelity and Guaranty*, 923 F.Supp. 1474 (M.D.Ala.1996), which defined pollutants as: "[A]ny solid, liquid [or] gaseous ... irritant or contaminant, including ... vapor ... fumes, acids, alkalis, chemicals and waste." *Id.* at 1477. Finding the exclusion barred coverage for damages resulting from offensive odors emanating from the insured's rendering plant, the court explained: "[T]here is no legal requirement that chemicals must be hazardous for the pollution exclusion to apply.... [T]here is no requirement that [the insured] be found in violation of an environmental law for the pollution exclusion to apply." *Id.* at 1479[13] and [14].

This court must enforce the Absolute Pollution Exclusion as written, not rewrite it. *Brugioni v. Maryland Casualty Co.*, 382 S.W.2d 707, 710[2] (Mo.1964). Accordingly, this court finds no merit in Respondents' argument that the sludge had to be a hazardous material "by federal definition" in order for the Absolute Pollution Exclusion to bar coverage.

■ Another argument advanced by Respondents against CIE's first point is that the Absolute Pollution Exclusion is ambiguous. Citing *Shelter Mutual Ins. Co. v. Brooks*, 693 S.W.2d 810, 811–12[2] (Mo. banc 1985), Respondents remind this court that ambiguities in exclusions are resolved in favor of the insured.

In support of their hypothesis that the Absolute Pollution Exclusion is ambiguous, Respondents rely on *Sargent Construction Co., Inc. v. State Auto. Ins. Co.*, 23 F.3d 1324 (8th Cir.1994). There, a construction contractor's workers used a substance containing muriatic acid to roughen the surface of a concrete floor before applying a product to level it. *Id.* at 1325. Fumes from the acid corroded chrome portions of various fixtures at the job site, causing some $75,000 damage. *Id.*

The contractor's liability insurance carrier maintained the damage was not covered because of a "pollution exclusion" in the policy which defined "pollutants" as, *inter alia:* "[A]ny solid, liquid, gaseous ... irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 1325–26.

The contractor filed a declaratory judgment action against the insurer; the insurer eventually moved for summary judgment on the basis of the exclusion. *Id.* at 1326. The trial court entered summary judgment for the insurer. *Id.*

The appellate court held the phrase "irritant or contaminant" in the definition of "pollutants" was ambiguous in that it was susceptible of more than one meaning. *Id.* at 1327. The opinion explained:

"A substance could be described as an 'irritant or contaminant' because it *in fact* has caused physical irritation, resulting in bodily injury, or contaminated the environment, causing property damage. The same substance could also be deemed an 'irritant or contaminant' because it has the *capability* of causing

---

8. Rollers filed a brief. Sparta adopted Rollers' brief. This opinion henceforth refers to

Rollers and Sparta collectively as Respondents.

physical irritation or contaminating the environment, regardless of whether the accident giving rise to the specific claim involved such harm."

*Id.* (emphasis in original).

Viewing the record in the light most favorable to the contractor, the appellate court held the trial court erred as a matter of law in granting summary judgment to the insurer. *Id.*

This court fails to see how *Sargent* governs the instant case. The issue in *Sargent* was whether muriatic acid was an "irritant or contaminant" within the meaning of the pollution exclusion, whereas the Absolute Pollution Exclusion in the instant case bars coverage for damage arising from exposure to toxic substances. Rollers' second amended petition specifically alleges the sludge contained substances toxic to humans and animals, and those substances caused Rollers' damage.

Respondents candidly concede that "whether or not a pollution exclusion is ambiguous depends on the nature of the substance at issue." Inasmuch as (1) the substance at issue in the instant case is sludge, (2) Rollers pled the sludge contained substances toxic to humans and animals, which caused Rollers' damage, and (3) the Absolute Pollution Exclusion bars coverage for damage arising from exposure to toxic substances, this court holds the Absolute Pollution Exclusion is not ambiguous regarding whether Rollers' damage is barred from coverage under Policy 3044. The Absolute Pollution Exclusion clearly bars coverage. Whether the Absolute Pollution Exclusion might be found ambiguous regarding some other substance in a different factual setting is a subject about which this court need not speculate.

■ Having rejected Respondents' premise that the Absolute Pollution Exclusion is ambiguous under the facts here, this court turns to Respondents' final attack on the Absolution Pollution Exclusion. That attack is based on the theory that

Sparta "is not a persistent polluter engaged in general polluting activities," hence the Absolute Pollution Exclusion does not apply. Respondents cite *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), in support of that argument.

In *Minerva*, the owner of a mobile home park provided a septic system for the tenants. 851 S.W.2d at 403. A tenant returned to her mobile home after an absence of several days and found it flooded with sewage. *Id.* The tenant sued the park owner, claiming the owner failed to exercise ordinary care in maintaining the septic system. *Id.* The tenant won a judgment; the owner satisfied it. *Id.*

The owner's liability insurance carrier denied coverage because of a pollution exclusion. *Id.* The owner filed a declaratory judgment action against the insurer. *Id.* The trial court granted summary judgment for the insurer. *Id.*

Reversing the judgment, the Supreme Court of Arkansas noted the pollution exclusion defined pollutants as: "[A]ny solid, liquid ... irritant or contaminant, including ... acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at 404.

The opinion discussed a line of cases supporting the premise that a pollution exclusion "is intended to prevent persistent polluters from getting insurance coverage for general polluting activities, whether the insured or a third party, and was never intended to cover those who are not active polluters but had merely caused isolated damage by something that could otherwise be classified as a 'contaminant' or 'waste.'" *Id.* Consistent with that rationale, the court held:

"It is not clear from the language of the policy that the single back-up of a septic tank in a mobile home park is necessarily the kind of damage the clause was intended to exclude. We find [the park owner's] interpretation that it was in-

552

tended for industrial polluters to be a plausible one."

*Id.* at 406.

Whether this court would find *Minerva* persuasive were the facts of the instant case similar to *Minerva* is academic, as the facts of the instant case do not resemble *Minerva*. There is an immense difference between a mobile home park providing a septic system for its occupants and a municipality collecting and disposing of sewage generated within the municipality. The magnitude of the latter dwarfs the former, as illustrated by the testimony of Sparta's mayor:

"[T]he main purpose of a sewage plant, is to remove all of these elements out of it so that we can discharge a clear safe water on the ground from the system. The sludge is a form of the residue that's left after the process is completed. The incoming sewage from the city would be processed no less than seven times through the complete plant, and it may run as many as ten or twelve times, depending on the flow. The solids are removed from it and are discharged into the sludge tank, and it lays in the sludge tank for a period of 45 days before it's discharged on the ground, and ... if [it] ... has to be put on the ground before that time, we have to put lime in it. Generally ... we just go and get commercial lime, 40–pound sacks, and for the 30,000–gallon tank that we have, we usually have to put in from eight to ten sackfuls in there whenever we discharge sewage that has not laid in the tank for 45 days."

This court concludes that if there are activities of relatively small dimension to which the Absolute Pollution Exclusion in the instant case would not apply, Sparta's wastewater treatment facility is not such an activity. To hold the Absolute Pollution Exclusion does not bar coverage for damage caused by toxic substances from sludge removed from sewage by Sparta's wastewater treatment facility would leave one wondering what kind of activity would

be excluded by the Absolute Pollution Exclusion.

In *Space v. Farm Family Mutual Insurance Co.*, 235 A.D.2d 797, 652 N.Y.S.2d 357 (A.D. 3 Dept.1997), the plaintiffs operated a family farm. 652 N.Y.S.2d at 358. They applied liquified cow manure to their land as fertilizer. *Id.* Neighboring landowners sued the plaintiffs, claiming the manure contaminated the neighbors' well. *Id.* The plaintiffs had a liability insurance policy providing coverage for property damage and personal injury. *Id.* The insurer disclaimed coverage on the basis of a pollution exclusion; consequently, the plaintiffs brought an action against the insurer for a declaration that it was required to defend and indemnify them in the contamination suit. *Id.* The trial court held the alleged contamination fell within the pollution exclusion. *Id.* The appellate court affirmed, stating:

"Although plaintiffs may be correct in their contention that liquid manure is not a 'pollutant' or 'contaminant' when properly applied (and confined) to cropland, we are not persuaded that the characterization of the substance need be rigidly controlled by the time and place of its initial discharge or application. To the contrary, the subsequent leachate of intentionally deposited waste materials has been held to fall within a similar pollution exclusion[.] In our view, liquid manure is properly classified as a 'waste material', 'pollutant' or 'contaminant' when, as is alleged in the underlying action, the substance has leached into the groundwater and contaminated a well on adjoining property[.]"

*Id.* (citations omitted).

This court could discuss countless other cases, but such a discussion would demonstrate only that in each case the pollution exclusion was scrupulously studied and the facts were thoroughly examined to determine whether the claim fell within the exclusion. Having followed that procedure

in the instant case, this court holds as a matter of law that the averments against Sparta in Rollers' second amended petition and the evidence presented to the trial court establish that the Absolute Pollution Exclusion bars coverage of Rollers' claim. Having decided that, this court does not reach CIE's second assignment of error.

The judgment is reversed and this case is remanded to the trial court with a directive to enter judgment declaring CIE has no duty under Policy 3044 to defend Sparta against Rollers' second amended petition in the underlying suit and that CIE has no duty to indemnify Sparta for any judgment that might be returned against it in that suit.

PARRISH and SHRUM, JJ., concur.