**Linda M. HERINGER, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, et al., Respondent.**

**No. WD 62995.**

Missouri Court of Appeals, Western District.

May 4, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2004.

Application for Transfer Denied Aug. 24, 2004.

Kirk R. Presley, Kansas City, MO, for appellant.

Susan F. Robertson, Columbia, MO, for respondent.

Before RONALD R. HOLLIGER, P.J., ROBERT G. ULRICH and JAMES M. SMART, JR., JJ.

ROBERT G. ULRICH, Judge.

Linda Heringer appeals the summary judgment entered in favor of American Family Mutual Insurance Company in her action against the company for equitable garnishment. She claims that the trial court erred in finding that the pollution exclusion in the insurance policy barred coverage for injuries she sustained as a result of exposure to lead paint. The judgment of the trial court is affirmed.

### Facts

The facts in this case are not disputed. Ann and Grafton Cook III purchased a home located at 401 Morrison Street in Fayette, Missouri, in 1996. In 1998, the Cooks hired Ms. Heringer as an independent contractor to assist with the renovation of the home. Part of her duties required her to scrape paint, which, unknown to her, contained lead from the interior and the exterior of the home. During the process of using a heat gun to assist in removing the lead-based paint, Ms. Heringer was exposed to and either absorbed, inhaled, or ingested toxic quantities of lead. As a result of her exposure to the lead-based paint, Ms. Heringer suffered from lead poisoning and sustained severe and permanent injuries. During the time that Ms. Heringer was exposed to the lead-based paint and sustained injury from such exposure, the Cooks were insured under a policy of liability insurance issued by American Family.

Ms. Heringer filed a petition for damages against the Cooks on May 9, 2000. The Cooks tendered the defense of the action to American Family; however, American Family denied coverage. As a

result of American Family's denial of coverage, the parties entered into an assignment and settlement agreement pursuant to section 537.065, RSMo 2000, and agreed to a trial before the court on the petition for damages. On April 10, 2001, the trial court entered judgment in favor of Ms. Heringer and against the Cooks in the amount of $1,000,000.

Ms. Heringer filed the underlying petition for equitable garnishment against American Family on October 1, 2001, seeking to partially satisfy her judgment against the Cooks with proceeds from the insurance policy issued to the Cooks by American Family. Thereafter, Ms. Heringer filed her motion for summary judgment. American Family filed a cross motion for summary judgment. Following a hearing on the motions, the trial court granted American Family's motion for summary judgment and denied Ms. Heringer's, finding that the insurance policy was unambiguous and the pollution exclusion operated to exclude coverage for Ms. Heringer's claims for bodily injury. This appeal by Ms. Heringer followed.

## Standard of Review

Appellate review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's re-

sponse to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

## Pollution Exclusion

The issue in this case is whether the insurance policy's pollution exclusion excluded coverage for Ms. Heringer's injuries. The material facts are not disputed. The interpretation of the meaning of the insurance policy is a question of law. *Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856, 858 (Mo.App. E.D.2000).

The general rules for interpretation of contracts apply to insurance policies. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. banc 1993). If an insurance policy is unambiguous, it is enforced as written absent a statute or public policy requiring coverage. *Id.* at 302. If the language of the policy is am-

biguous, it is construed against the insurer. *Id.* An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* "The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions." *Kellar v. Am. Family Mut. Ins. Co.,* 987 S.W.2d 452, 455 (Mo.App. W.D.1999)(quoting *Kastendieck v. Millers Mut. Ins. Co. of Alton,* 946 S.W.2d 35, 39 (Mo.App. W.D.1997)). To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy. *Id.* Where an insurer seeks to avoid coverage under a policy exclusion, it has the burden of proving the applicability of the exclusion. *Am. Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett,* 31 S.W.3d 1, 4 (Mo.App. W.D. 2000).

 Generally, if a term is defined in an insurance policy, a court will look to that definition and nowhere else. *Hobbs v. Farm Bureau Town & Country Ins. Co.,* 965 S.W.2d 194, 197 (Mo.App. E.D.1998). If a term within an insurance policy is clearly defined, the policy definition controls. *Id.* "If a conflict arises between a technical definition of a term and the meaning of the term which would reasonably be understood by the average lay person, the lay person's definition will be applied, unless it is obvious the technical meaning was intended." *Kellar,* 987 S.W.2d at 455.

 The American Family policy provides, in pertinent part:

### DEFINITIONS

\* \* \* \* \*

9. Occurrence means an accident, including exposure to conditions, which results during the policy period, in:

a. bodily injury; or

b. property damage.

Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence.

10. Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance or any other substance listed as a hazardous substance by any governmental agency. It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### LIABILITY COVERAGES— SECTION II

### COVERAGE D—PERSONAL LIABILITY COVERAGE

We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy.

\* \* \* \* \*

### EXCLUSIONS—SECTION II

Coverage D—Personal Liability and Coverage E—Medical Expenses do not apply to:

\* \* \* \* \*

13. Pollution Damage. We will not cover bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage, trespass, wrongful entry, migration, ingestion, inhalation or absorption of pollutants from any source.

We will not pay for any loss, cost, expense, fine or penalty to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or dispose of pollutants, whether or not such actions are done voluntarily or at the direction, request or demand of any governmental body or agency, any other authority, person or organization, or as a result of any suit.

The undisputed facts reveal that Ms. Heringer suffered from lead poisoning and sustained severe and permanent injuries as a result of her exposure to and either absorption, inhalation, or ingestion of toxic quantities of lead. The pollution exclusion clearly and unambiguously excludes from coverage bodily injury arising out of the ingestion, inhalation, or absorption of pollutants. The definition of pollutant in the policy unambiguously indicates that lead falls within its scope. In her brief, Ms. Heringer cites a Massachusetts case that found coverage for injuries involving exposure to lead-based paint. In *Atlantic Mutual Insurance Co. v. McFadden,* 413 Mass. 90, 595 N.E.2d 762 (1992), the insurance policy defined the term "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at 763 n. 3. In finding that the pollution exclusion did not exclude coverage for claims arising out of the lead poisoning of two children, the court explained:

We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence. There simply is no language in the exclusion provision from which to infer that the provision was drafted with a

view toward limiting liability for lead paint-related injury. The definition of "pollutant" in the policy does not indicate that leaded materials fall within its scope. Rather, the terms used in the pollution exclusion, such as "discharge," "dispersal," "release," and "escape," are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste.

*Id.* at 764 (internal citations omitted).

Unlike in *McFadden,* the policy language in this case specifically and unambiguously defines lead as a pollutant. The pollution exclusion clearly contemplates a limitation of liability for lead paint-related injury.

Ms. Heringer argues that "[w]ithout some limiting factor, the pollution exclusion would reach situations that no one would ever consider pollution." In making this argument, she cites hypotheticals discussed in *MacKinnon v. Truck Insurance Exchange,* 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003), such as an allergic reaction to pool chlorine, the application of iodine onto a cut through an eyedropper, and a child's accidental ingestion of a pesticide negligently left in an empty soft drink bottle. *Id.* at 1214. In that case, the California Supreme Court determined that a standard pollution exclusion clause that excluded injuries caused by the "discharge, dispersal, release or escape of pollutants" did not apply to exclude injury to a tenant resulting from the landlord's allegedly negligent use of pesticides on his property. *Id.* at 1207, 1218. The term "pollutants" was defined by the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste materials. Waste materials in-

clude materials which are intended to be or have been recycled, reconditioned or reclaimed." *Id.* at 1207. In determining whether the terms "irritant or contaminant" were ambiguous and whether they could be applied to virtually any substance in an attempt to defeat coverage, the Court concluded that a broad interpretation of the terms may yield some absurd results.[1] *Id.* at 1214.

Ms. Heringer also contends that a broad application of the pollution exclusion renders an entire portion of the coverage in the policy a nullity. Specifically, she asserts that a broad interpretation of the exclusion would eliminate any coverage for "exposure to conditions, which result during the policy period, in bodily injury." She cites a Missouri case, *Hocker Oil Co. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510 (Mo.App. S.D.1999), where a pollution exclusion was found to be ambiguous. In *Hocker*, the insured, an operator of a gasoline station, sought coverage under its business insurance policy for property damage caused by leakage of gasoline from a storage tank. *Id.* at 512. The insurer denied coverage under the pollution exclusion in the policy, which provided that the policy's coverage did not apply "to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." *Id.* The policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at 513. Finding that the pollution exclusion was ambiguous and, thus, construing it against the insurer, the

Southern District focused on the policy's failure to identify gasoline as a pollutant. *Id.* at 518. It explained that the insured could have reasonably concluded that gasoline was not deemed a pollutant for purposes of the exclusion since it was not specifically identified as such. *Id.* The court further stated that "it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability." *Id.* (citing *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind.1996)).

The analyses of *MacKinnon* and *Hocker* do not apply in this case. The issue in this case is not the interpretation of a general definition of pollutant to determine whether lead is an irritant and/or contaminant. Unlike in *MacKinnon* and *Hocker*, which interpreted broad definitions of the term "pollutant," lead is specifically and unambiguously defined in the policy in this case as a pollutant. Ms. Heringer's arguments regarding a broad interpretation of the pollution exclusion are without merit where the substance causing the damage is specifically identified as a pollutant in the policy.

■ Finally, Ms. Heringer argues that the pollution exclusion applies only to traditional environmental pollution and that a "lay person would not understand that such exclusion applied to injuries incurred by one person from exposure to lead paint while working in a residential setting." Missouri courts, however, have refused to limit pollution exclusions in other contexts. *See Hartford Underwriter's Ins. Co. v. Estate of Turks*, 206 F.Supp.2d 968, 977

---

1. *Contra Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856 (Mo.App. E.D.2000) (where grease and other kitchen waste were considered pollutants within meaning of pollution exclusion provision of insurance policy,

exclusion provision barred coverage of property loss caused by blockage of premises' plumbing system by such grease and waste released into system by restaurant).

(E.D.Mo.2002)(citing these cases). In *Cincinnati Insurance Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661 (Mo.App. E.D.2001), the insured alleged that the pollution exclusion of the building and personal property coverage form did not apply to exclude coverage for damage caused by friable asbestos because pollution exclusions applied only in cases of traditional environmental pollution. *Id.* at 666. The court held that "the language of the policy clearly applies the exclusion to the 'discharge [or] release ... of pollutants.' We cannot read the word 'environment' into the policy to limit when a release or discharge has taken place." *Id.*

Similarly, in *Casualty Indemnity Exchange v. City of Sparta*, 997 S.W.2d 545, 550 (Mo.App. S.D.1999), the insureds alleged that because sewer sludge, which migrated to their farm and caused damage to dairy cows, was not hazardous material "by federal definition," the pollution exclusion in the policy did not bar coverage. *Id.* at 550. The court noted that the exclusion did not require a substance to be a hazardous material "by federal definition" in order to be a toxic substance. *Id.* Citing a case that found that "[t]here is no requirement that [the insured] be found in violation of an environmental law for the pollution exclusion to apply," the court held that it must enforce the pollution exclusion as written and not rewrite it. *Id.* (citing *Kruger Commodities, Inc. v. United States Fid. & Guar.*, 923 F.Supp. 1474, 1479 (M.D.Ala.1996)).

The language in the American Family policy applies the pollution exclusion to the "ingestion, inhalation or absorption of pollutants from any source." It does not limit the pollution exclusion to environmental pollution. As in the *Cincinnati Insurance* case, the word "environment" will not be read into the policy in this case to limit the pollution exclusion. Moreover, to conclude

that lead paint is not a pollutant would require that the explicit language of the policy be ignored. *See Hartford*, 206 F.Supp.2d at 968.

Because the insurance policy's pollution exclusion excludes coverage for Ms. Heringer's injuries, the trial court correctly entered summary judgment in favor of American Family. The judgment of the trial court is affirmed.

RONALD R. HOLLIGER, P.J. and JAMES M. SMART, J. concur.